Sheila M. JACKSON, Plaintiff-Appellant,

v.

Paul A. KELLY, Defendant-Appellee.

No. 75-1937.

United States Court of Appeals,
Tenth Circuit.

Argued Oct. 13, 1976.

Submitted May 19, 1977.

Decided June 24, 1977.

Gene M. Hoffman, Hoffman, McDermott & Hoffman, Denver, Colo., for plaintiff-appellant.

Jerre W. Dixon, Asst. U. S. Atty., Denver, Colo. (James L. Treece, U. S. Atty., Denver, Colo., on the brief), for defendant-appellee.

Before LEWIS, Chief Judge, and BREITENSTEIN, SETH, HOLLOWAY, McWILLIAMS, BARRETT and DOYLE, Circuit Judges, sitting *en banc.*

LEWIS, Chief Judge.

Plaintiff sought to recover damages in the district court for the District of Colorado in this diversity action for medical malpractice by defendant. At the time of the alleged malpractice, defendant was a military physician stationed at the United States Air Force Hospital in Lakenheath, England, and plaintiff was the dependent spouse of an air force captain. Plaintiff alleged that defendant, a specialist in obstetrics and gynecology, negligently treated her for conditions relating to her pregnancy. The district court dismissed plaintiff's suit, holding that defendant as a federal official is immune from a suit such as this arising out of actions taken within the scope of his official employment. For purposes of this appeal we assume defendant was acting within the scope of his employment as a military physician.

■ In the absence of statutory immunity, the test for whether an official shall be immune from liability for money damages is not mechanical. "[T]he immunity conferred [is] not . . . the same for all officials for all purposes." *Doe v. McMillan,* 412 U.S. 306, 319, 93 S.Ct. 2018, 2028, 36 L.Ed.2d 912. It thus requires a careful inquiry into the nature of the alleged wrongful acts and scope of the accused official's duties. The need for a careful inquiry stems from the competing policies underlying official immunity from money damages. From the perspective of the individual citizen, some compensatory remedy must be available to vindicate injury inflicted by government officials. From the perspective of the public interest in the effective administration of policies of government, officials must be free to exercise their duties, especially discretionary duties, without having to defend their actions in court. The doctrine of immunity reflects the view that an official may be excessively hampered if he is subject to the tedious and potentially embarrassing process of litigation regardless of the ultimate outcome. *Barr v. Matteo,* 360 U.S. 564, 571, 79 S.Ct. 1335, 3 L.Ed.2d 1434.

■ The Supreme Court has only recognized a very narrow category of judicially-

created absolute immunity for some federal officials.[1] *See Barr v. Matteo, supra* at 569, 79 S.Ct. 1335. Since defendant does not come within the narrow category of federal officials entitled to absolute immunity under recent Supreme Court decisions, the mere fact defendant was acting within the outer perimeter of his authority does not immunize him from personal liability. Any intimation to the contrary in *Bates v. Carlow*, 10 Cir., 430 F.2d 1331, that an official operating at defendant's level is absolutely immune from liability for acts performed within the scope of his authority is inconsistent with recent Supreme Court pronouncements and thus must be overruled.

■ *Doe v. McMillan, supra*, makes it clear we must apply the discretionary function test, *i. e.*, whether defendant's duties were discretionary, to determine whether defendant is immune from personal liability for acts within the scope of his authority.[2] In *Doe*, the immunity of the Public Printer and the Superintendent of Documents for Congress was at issue. Plaintiffs alleged these officials invaded their privacy by publishing certain derogatory documents for use in Congress and distribution elsewhere. The Court found the officials were acting within the scope of their duties but their duties were not discretionary. The Court held official immunity does not automatically attach to any conduct expressly or impliedly authorized by law, unless the official was exercising a discretionary function. This rule is appropriate because the effective administration of policies of government is not severely impaired if officials with ministerial duties are answerable in damages for failure to perform obligatory functions with reasonable care.

*Doe* further indicates that when an official acting in a nondiscretionary capacity claims immunity, the Supreme Court

has advised a discerning inquiry into whether the contributions of immunity to effective government in particular contexts outweigh the perhaps recurring harm to individual citizens . . ..

412 U.S. at 320, 93 S.Ct. at 2028. Thus, the Court mandates the use of the discretionary function test, and a direct balancing of the policies underlying the immunity doctrine in the context of each fact situation. *See, e. g., Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (qualified immunity granted to school board officials who exercise discretion); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (qualified immunity for Governor and executive officers of state exercising discretionary responsibilities).

Mindful of these principles, the first step here is to decide whether defendant's functions were discretionary. Secondly, the consideration of harm to the individual citizen must be balanced with the threat to effective government in the context of this case.

## I.

■ No foolproof measure of discretionary duties exists. One source of guidance useful here, however, is the explanation of the discretionary-ministerial distinction developed in the context of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80. This distinction is important under the FTCA because the Act excepts claims based on performing or failing to perform discretionary functions. 28 U.S.C. § 2680(a). Generally speaking, a duty is discretionary if it involves judgment, planning, or policy decisions. It is not discretionary if it involves enforcement or administration of a mandatory duty at the operational level, even if professional expert

---

1. "Judges [and] executive officers with discretionary functions . . . have been held absolutely immune . . .." *Doe v. McMillan, supra* at 319, 93 S.Ct. at 2028.

2. This court employed the discretionary function test in *Smith v. Losee*, 10 Cir., 485 F.2d 334, 343–44, *cert. denied*, 417 U.S. 908, 94 S.Ct.

2604, 41 L.Ed.2d 212. Other courts of appeals have also employed the discretionary function test. *E. g., Henderson v. Bluemink*, 167 U.S. App.D.C. 161, 511 F.2d 399, 401–03; *Green v. James*, 9 Cir., 473 F.2d 660; *Bivens v. Six Unknown Named Agents*, 2 Cir., 456 F.2d 1339.

evaluation is required. *Nelms v. Laird*, 4 Cir., 442 F.2d 1163, *rev'd on other grounds*, 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499; *Hendry v. United States*, 2 Cir., 418 F.2d 774. The key is whether the duty is mandatory or whether the act complained of involved policy-making or judgment. For example, negligence in the construction of a government facility is nondiscretionary and subjects the government to liability under the FTCA. *See Seaboard Coast Line R. R. v. United States*, 5 Cir., 473 F.2d 714.

■ This court has twice held the discretionary function exception does not except the government from liability for negligent medical care. In *Griggs v. United States*, 10 Cir., 178 F.2d 1, *rev'd on other grounds*, *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152, an army officer died while under treatment in an army hospital and it was alleged the death was caused by the negligent, careless, and unskillful acts of army medical personnel. We held the discretionary function exception did not apply to medical treatment because

> [i]t is manifestly plain that the alleged acts of negligence, while involving skill and training, were non-discretionary.

178 F.2d at 3. In *United States v. Gray*, 10 Cir., 199 F.2d 239, plaintiff, who was a patient in an army hospital, jumped out a hospital window after the guard which had been assigned to her room had been removed. In holding the discretionary function exception did not bar recovery for her injuries we said

> [w]hile it was within the discretion of the managerial authorities at the hospital to determine in the first instance whether suitable facilities were available for the care and treatment of plaintiff, having decided that such facilities were available and having admitted her, the Government was not authorized to exercise in an unbridled manner and without due regard for the known facts and circumstances a plain and clear duty or function in respect to her care and treatment, with complete immunity under the Act from liability for negligence in connection

therewith proximately resulting in personal injury to plaintiff.

*Id.* at 241–42.

■ Applying these principles and precedents, it is clear defendant's duty in treating plaintiff was nondiscretionary. He did not engage in planning or policy-making, but merely attempted to carry out the ministerial duty of caring for plaintiff in a reasonable manner as he was obliged to do as an air force physician. Plaintiff's complaint merely charges defendant with the negligent practice of medicine; it does not ask the district court to review a federal health policy decision made by defendant.

We recognize that medical treatment involves judgment and discretion. This does not resolve the matter, however, because medical treatment by a government doctor does not necessarily involve governmental discretion. This distinction is cogently presented in *Spencer v. General Hospital*, 138 U.S.App.D.C. 48, 425 F.2d 479, 489 (Wright, J., concurring, emphasis in original):

> The point is that *medical*, not *governmental* judgment and discretion are involved. The common law of malpractice, as normally applied to private doctors and hospitals, already grants the leeway properly left for expert judgment in the relatively stringent requirements it imposes upon plaintiffs in medical negligence suits. No further leeway is required for the publicly employed doctor or the public hospital than for their private counterparts.

The District of Columbia Circuit Court of Appeals recently held an army doctor does not have immunity from civil liability arising out of actions of a strictly medical nature. *Henderson v. Bluemink*, 167 U.S.App. D.C. 161, 511 F.2d 399. The court reasoned government employees would be protected when they exercised discretion of a governmental nature but would not be protected when they exercised discretion of a purely medical nature. As the court so aptly explained:

> To be sure, the acts complained of involved the exercise of discretion in the normal usage of that term but the signif-

icant factor is that the discretion exercised might have been medical rather than governmental. The chief policy underlying the creation of immunity for lower governmental officials is mainly that which stems from the desire to discourage "the fearless, vigorous, and effective administration of policies of government." However, that policy is not applicable to the exercise of normal medical discretion since doctors making such judgments would face the same liability outside of government service as they would face if the complaint below is upheld. A fortiori, the threat of liability for negligence would not deter the fearless exercise of medical discretion within government service any more than the same threat deters the exercise of medical discretion outside of government. Holding government medical personnel to the same standards of care which they would face outside of government service in no way burdens their public responsibility or deters entry into government service or the vigorous exercise of public responsibility once having entered that service.

*Id.* at 402–03 (footnotes omitted). We agree with the District of Columbia Circuit Court of Appeals that the type of discretion necessary to immunize official conduct must be governmental not medical discretion. Since defendant's acts were not governmental in nature, he is not automatically shielded from any liability which may arise out of those acts under the doctrine of official immunity.

## II.

As discussed above, the determination that defendant's functions were not discretionary does not end the analysis of the issue whether defendant is entitled to official immunity. We read *Doe v. McMillan,* *supra,* as requiring us to balance the consideration of harm to the individual citizen with the threat to effective government in the context of this case before granting or refusing to grant defendant official immunity.[3]

The policy which weighs in favor of granting monetary relief is the gravity of harm to the individual citizen. In *Doe v. McMillan, supra,* the alleged harm suffered by plaintiff consisted of damage to their good names and reputations. The Court concluded this harm was sufficiently grave to preclude immunity for the Public Printer and Superintendent of Documents. To us, the danger of suffering permanent bodily injury, disfigurement, and loss of future earnings is of at least equal gravity as damage to one's reputation. Medical malpractice may result in one's being made a cripple for life or even result in death. In sum, the danger to individual citizens from negligent medical care is substantial.

The contravening consideration is whether immunity would contribute to effective government. Obviously, some draining of government resources occurs whenever government officials are called to defend their actions in court. In this case, however, the burden to effective government does not outweigh the dangers to individual citizens of being severely or permanently injured or maimed by negligent military physicians. Effective government would not suffer excessively if monetary compensation were permitted because the alleged wrongful conduct does not involve politically sensitive judgments or discretionary governmental acts. Granting damages to plaintiff would not tend to constrict government functioning in an area where prompt governmental actions and snap governmental judgments are essential. The

---

3. The *necessity for this second step in the anal*ysis was recognized by this court in *Smith v. Losee,* 10 Cir., 485 F.2d 334, 343, *cert. denied,* 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212, wherein we said

[m]any decisions analyze the ministerial versus the discretionary functions as the determining factor, . . . but as we have indicated in *Franklin v. Meredith,* 386 F.2d 958 (10th Cir.), this is an important factor, but it must be evaluated together with the purposes and need for the rule. This must be done with the more general considerations indicated in the recent Supreme Court opinions above referred to.

effect of denying immunity is merely to place an additional sanction against officials who fail to perform the ministerial duty of providing medical treatment in a reasonable manner. Thus, we hold that defendant, an air force physician acting within the scope of his employment, is not entitled to absolute immunity by judicial decision.[4]

### III.

On October 8, 1976, Congress by statute authorized the Secretary of Defense to provide protection through indemnification or insurance to medical personnel in defendant's situation. 10 U.S.C. § 1089(f).[5] This statute was not made retroactive, however, and therefore has no applicability to this case.

■ Defendant contends we should hold him harmless from personal liability by granting him official immunity. This, in effect, would give defendant the same protection from personal liability as 10 U.S.C. § 1089(f) would provide him if this action had occurred after October 8, 1976. Such a holding on our part would render 10 U.S.C. § 1089(f) superfluous. We should not and

do not suppose that Congress intended to enact unnecessary statutes. The policy announced in the statute has been a matter of great concern to Congress and other governmental bodies. The purpose of the statute is to provide a method for the assumption by the government of responsibility for damage claims against its military medical personnel arising from medical care given in foreign countries in the scope of their employment. Behind it is the desire to protect military medical personnel from the ever-present danger of personal liability and relieve them of the expense of supplying private malpractice insurance, while preserving a means for compensating malpractice victims for their injuries. 1976 U.S. Code Cong. & Admin. News, pp. 4443–58.

Granting defendant official immunity would not only make 10 U.S.C. § 1089(f) superfluous, it would also contravene one of Congress' aims in enacting section 1089(f) in its present form. Instead of granting military medical personnel practicing in foreign countries absolute immunity from suit for acts within the scope of their employment, Congress elected to have the govern-

---

**4.** We are not persuaded to adopt a contrary result by the decision in *Martinez v. Schrock*, 3 Cir., 537 F.2d 765, *cert. denied*, 430 U.S. 920, 97 S.Ct. 1339, 51 L.Ed.2d 600. The Court of Appeals for the Third Circuit, sitting *en banc* with one judge concurring in the result and two judges dissenting, held army surgeons are protected by the immunity doctrine from a wrongful death action brought by the representative of the estate of a retired enlisted man. The court relied on its own decision in *Bailey v. DeQuevedo*, 3 Cir., 375 F.2d 72, *cert. denied*, 389 U.S. 923, 88 S.Ct. 247, 19 L.Ed.2d 274, in granting the army surgeons absolute immunity. In *Bailey* the court held an army doctor was immune from suit by active duty military personnel. For the reasons set forth in the concurring and dissenting opinions in *Martinez* we prefer not to extend the *Bailey* rule to situations where the injured patient is not on active duty. *See United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139. The court in *Martinez* also noted the plaintiff had a remedy under the Federal Tort Claims Act. In our case plaintiff has no remedy under the Federal Tort Claims Act because the action arose in a foreign country. 28 U.S.C. § 2680(k).

For the reasons discussed in parts I, II, and III of this opinion we believe the rule stated in

*Henderson v. Bluemink*, 167 U.S.App.D.C. 161, 511 F.2d 399, that military doctors are not automatically entitled to immunity for acts within the scope of their employment, is the proper resolution of the issue presented in this case.

**5.** 10 U.S.C. § 1089(f) provides:

The head of the agency concerned or his designee may, to the extent that he or his designee deems appropriate, hold harmless or provide liability insurance for any person described in subsection (a) for damages for personal injury, including death, caused by such person's negligent or wrongful act or omission in the performance of medical, dental, or related health care functions (including clinical studies and investigations) while acting within the scope of such person's duties if such person is assigned to a foreign country or detailed for service with other than a Federal department, agency, or instrumentality or if the circumstances are such as are likely to preclude the remedies of third persons against the United States described in section 1346(b) of title 28, for such damage or injury.

ment protect them through indemnification or insurance. The effect of this approach rather than absolute immunity is to ensure a remedy to victims of malpractice by military medical personnel assigned to a foreign country. If we were to grant official immunity to military medical personnel in foreign countries then malpractice victims would lose this remedy because the government's responsibility for damage claims under section 1089(f) is premised on the liability of military medical personnel in the first instance.

## IV.

We refrain from affording defendant absolute immunity by judicial decision. We reverse the district court's order of dismissal and remand the case for further proceedings not inconsistent with this opinion.