Loran D. PALMER and Brenda M. Palmer, husband and wife, and Arthur Stewart, Administrator of the Estate of Esther Stewart, Deceased, Plaintiffs,

v.

PENN–OHIO ROAD MATERIALS, INC., Defendant and Third-Party Plaintiff,

v.

SPECTOR FREIGHT SYSTEMS, INC., Defendant,

v.

Loran D. PALMER, Third-Party Defendant,

and

L. G. Kisseleff, W. C. Moffit, J. P. Iacino, Jack Bestwick, and G. L. Pellegrini, Third-Party Defendants.

Loran D. PALMER and Brenda M. Palmer, husband, wife, and Arthur Stewart, Administrator of the Estate of Esther Stewart, Deceased, Plaintiffs,

v.

L. G. KISSELEFF, W. C. Moffit, J. P. Iacino, Jack Bestwick and G. L. Pellegrini, Defendants.

Civ. A. Nos. 77–994, 78–325.

United States District Court, W. D. Pennsylvania.

May 21, 1979.

Robert S. Garrett, Pittsburgh, Pa., for Penn-Ohio Road Materials, Inc.

Gary F. Sharlock, Pittsburgh, Pa., for third-party defendant Palmer.

Herbert B. Conner, Pittsburgh, Pa., for Spector Freight Systems, Inc.

Michael W. Bolechowski, Asst. Atty. Gen., Harrisburg, Pa., for third-party defendant Kisseleff et al.

## OPINION

ZIEGLER, District Judge.

### I. *History of Case*

This wrongful death, survival and personal injury action arises out of a vehicular collision which occurred on March 27, 1976, on Interstate 80, Mercer County, Pennsylvania. The roadway is a four-lane highway with two eastbound and two westbound lanes of travel separated by a medial strip.

Plaintiff, Loran D. Palmer, was operating a motor vehicle with passengers in a westerly direction. At a point near a construction project, traffic was restricted to one lane in each direction in the westbound lane. Plaintiff was proceeding behind a tractor-trailer in the right lane. After clearing certain traffic barriers, he pulled into the left lane to pass the rig.

An employee of defendant, Spector Freight Systems, Inc., was operating a tractor-trailer in the same lane but in an easterly direction. Palmer swung to the left to avoid a collision but without success. As a result of the impact, Loran and Brenda Palmer sustained serious personal injuries and Esther Stewart was killed.

Plaintiffs instituted diversity actions for compensatory damages against a number of defendants. Claims were filed against Spector Freight Systems, Inc., the Commonwealth of Pennsylvania,[1] several employees of the Commonwealth of Pennsylvania Department of Transportation (hereinafter Commonwealth employees), and Penn-Ohio Road Materials, Inc., the contractor that erected the signs and barriers pursuant to a contract with the sovereign.

Plaintiffs contend the Commonwealth employees were negligent in the following particulars: (1) failing to properly inspect the construction site to insure compliance with the contract between Penn-Ohio and the state; (2) failure to adequately protect motorists traveling west near the situs of the accident; and (3) failure to enforce the terms of the contract by requiring Penn-Ohio to erect markers or paint double yellow lines on the roadway to warn motorists of the unusual traffic patterns.

Presently before the court are the motions for summary judgment of the Commonwealth employees. For the reasons set forth herein, the motions must be denied.

## II.  *Discussion*

The instant motions raise significant questions concerning the scope and effect of the recent decision of the Pennsylvania Supreme Court which substantially alters the doctrine of official immunity. *DuBree v. Commonwealth,* Pa., 393 A.2d 293 (1978). The doctrine of official immunity in Pennsylvania prior to *DuBree,* was ably summarized by Mr. Chief Justice Eagen in a dissenting opinion in that case:

[O]fficial immunity in Pennsylvania could be divided into two types, namely, absolute immunity and unlimited or conditional immunity. Absolute immunity could be invoked by 'high ranking offi-

cials' acting within the scope of their authority and within the course of their duties or powers. [Citations omitted.] Limited immunity could be invoked by other officials acting within the scope of their authority and within the course of their duties or powers. [Citations omitted.]

Absolute immunity 'foreclose[d] the possibility of suit,' *Montgomery v. Philadelphia,* 392 Pa. 178, 183, 140 A.2d 100, 103 (1958) so that the fullest 'protection of society's interest in the unfettered discharge of public business,' *id.,* might be afforded 'high ranking officials.' Limited immunity did not foreclose the possibility of suit against other officials because it could be overcome by an allegation in the plaintiff's complaint that the conduct complained of was malicious, wanton, or reckless. *Burton v. Fulton,* 49 Pa. 151 (1865); but; absent such an allegation and proof, the official was immune from the suit.

393 A.2d at 296–97 (Eagen, C. J., dissenting).

In *DuBree,* plaintiff's decedent was killed when his car plunged into an excavation on a public highway. Plaintiff instituted suit for wrongful death against the Commonwealth of Pennsylvania and seven named officials of PennDOT.[2] The trial court dismissed the counts against the individual employees on the grounds of official immunity. The Commonwealth Court affirmed. 8 Pa.Cmwlth. 567, 303 A.2d 530 (1973). The Supreme Court of Pennsylvania vacated and remanded, holding that "the liability of the individual appellees should not have been analyzed solely on the basis of their status as employees of the Commonwealth." 393 A.2d at 294. Henceforth, when immunity is asserted, "an examination is required of whether the considerations underlying

---

1. In an earlier opinion and order, we dismissed the Commonwealth as a party on the basis of the Eleventh Amendment. *Palmer v. Penn-Ohio Road Materials, Inc.,* 462 F.Supp. 312 (W.D.Pa.1978).

2. The individual defendants and their official titles at the time of the alleged incident were: Robert G. Bartlett, Secretary of Highways; Paul L. Thomas, District Engineer; Joseph Wade, Assistant District Engineer; John Auerbach, Highway Maintenance Sup't. 4; Oscar W. Kulp, Highway Maintenance Sup't. 1; Harry F. Snyder, Highway Foreman; and Eugene C. Schad, Highway Foreman.

'official immunity' are effectively advanced." *Id.* at 295.

A detailed assessment of the contours of *DuBree* will be attempted later in this opinion. One principle is clear however: the pre-*DuBree* distinction between absolute immunity and conditional or limited immunity has been abrogated in Pennsylvania. As a result, if this court determines that official immunity does not bar plaintiffs' claims against the Commonwealth employees, plaintiffs may recover upon a showing of mere negligence.

In their motions for summary judgment, the Commonwealth employees attempt to avoid the impact of *DuBree* by interdiction of three distinct arguments: (1) the action is barred by the Eleventh Amendment to the Constitution since any recovery against the employees will be paid from state funds; (2) Act 152, effective September 28, 1978, codified the law of official immunity existing on that date, and therefore, the pre-*DuBree* standard governs the disposition of this motion; and (3) assuming *DuBree* to be controlling, the Commonwealth employees are entitled to official immunity.

### A. *Eleventh Amendment Immunity*

The Eleventh Amendment to the Constitution reads as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

■ The Amendment was intended to insulate state treasuries from payment of money judgments in a federal forum and, absent a clear and express waiver, the Eleventh Amendment is a jurisdictional bar to such suits. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). It is settled that an action may be barred by the Eleventh Amendment even though a state is not a named party where the action is in essence one for recovery of money from the state. *Edelman v. Jordan, supra* at 663, 94 S.Ct. 1347; *Ford Motor Co. v. Dept. of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945).

■ However, it is equally well established that the Eleventh Amendment is no impediment to damage suits against state officials in their individual capacities. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

In the instant case, plaintiffs allege that the Commonwealth employees personally committed negligent acts. The Commonwealth is not a party, and plaintiffs seek no judgment against the Commonwealth. Nevertheless, the Commonwealth employees urge this court to apply the Eleventh Amendment as a jurisdictional impediment to these claims.

Their argument runs as follows. The Commonwealth has a statutory duty to procure public liability insurance covering all state employees for negligent acts while engaged in the performance of their duties. 71 P.S. § 634. Due to the unavailability of private insurance, the Commonwealth was forced to establish the Employee Liability Self Insurance Program (ELSIP). Op.Atty. Gen. 76–25, vol. 6, No. 36 Pa. Bulletin 2012 (1976). Since the Commonwealth employees are covered by the fund, the action is barred by the Eleventh Amendment.

In our judgment, the argument is vacuous. No case has been called to our attention which applies Eleventh Amendment immunity to persons sued in their individual capacities.[3] To the contrary, a long line of cases have held that the Eleventh Amendment is not an impediment to such suits. *Scheuer v. Rhodes, supra; West v. Keve,* 571 F.2d 158 (3d Cir. 1978); *Skehan v. Bd. of Trustees of Bloomsburg State College,* 590 F.2d 470 (3d Cir. 1978); *Flesch v. Eastern Pennsylvania Psychiatric Institute,* 434 F.Supp. 963 (E.D.Pa.1977).

---

**3.** The argument is apparently advanced for the first time in this case, inasmuch as several United States District Courts have applied Pennsylvania official immunity law in diversity actions without any discussion of possible Eleventh Amendment constraints. *See, Teague v. Consolidated Bathurst Lmtd.,* 408 F.Supp. 980 (E.D.Pa.1976); *Seybold v. Gunther,* 393 F.Supp. 604 (E.D.Pa.1975); *Cates v. Orslene,* No. 77–652 (W.D.Pa. Feb. 3, 1978).

■ The reason is plain. The Eleventh Amendment was adopted to protect the states. It was not intended to bar suits or money judgments against public employees in their individual capacities. A public employee is liable for tortious conduct just as any other citizen absent some form of immunity apart from the Eleventh Amendment.

■ The fact that money damages against employees of the Commonwealth of Pennsylvania may be paid from public funds does not broaden the scope of the Amendment. A money judgment is payable by the public employee, not the state. It is clear that, but for the decision of the General Assembly to indemnify its employees by securing liability insurance for their benefit, or establishing a publicly financed insurance plan such as ELSIP, individual employees would be required to satisfy any judgment predicated upon their acts.

ELSIP represents an attempt by the Commonwealth to protect its employees and also to insure that meritorious claims are paid. It is incongruous for the Commonwealth employees to argue that the state, by creating a fund to compensate victims, has somehow extended immunity to them so as to deny payment to the class of intended beneficiaries. We hold that the Eleventh Amendment does not bar the claims of plaintiffs against the Commonwealth employees.

## B. *Act 152 and Official Immunity*

As an alternative ground for dismissal, the Commonwealth employees contend that Act 152, which reinstated a limited form of sovereign immunity in Pennsylvania on September 28, 1978, codifies the law of official immunity as it existed on that date. *See* 1978 Pa.Legis.Serv. 629–36. Therefore, since Act 152 is a valid exercise of legislative prerogatives, defendants argue that *DuBree* is ineffective and inapposite. We disagree.

■ As a federal court with diversity jurisdiction, we are required to apply Pennsylvania law. *Daye v. Comm. of Pennsylva-nia,* 483 F.2d 294 (3d Cir. 1973). And while it is true that Act 152 did not alter the existing common law doctrine of official immunity, there is nothing in the Act to suggest that the General Assembly intended to prevent the courts from modifying the common law doctrine at a subsequent time. *DuBree* is dated October 5, 1978 and it is the most recent pronouncement of the law of Pennsylvania. It has been followed by numerous courts despite the fact that all cases post-dated Act 152. *See, e. g., Lehnig v. Felton,* 481 Pa. 557, 393 A.2d 302 (1978); *Kaplan v. Smith,* Pa., 396 A.2d 493 (1979); *Raneri v. DePollo,* Pa., 396 A.2d 875 (1979); *Cerino v. Twp. of Palmer,* —— Pa.Super. ——, 401 A.2d 770 (1979). Accordingly, we hold that the decision of the Supreme Court of Pennsylvania in *DuBree* controls the disposition of the official immunity issue in this case.

## C. *Immunity of Commonwealth Employees Under DuBree*

Having concluded that *DuBree v. Commonwealth,* Pa., 393 A.2d 293 (1978) is controlling on the question of official immunity for these Commonwealth employees, a detailed examination of the parameters of *DuBree* is required. The basic principle formulated in the opinion was stated as follows:

Where, but for the defendant's status, a right of action would lie under analogous rules of law, and no public policy would be promoted in shielding a defendant from liability, and the plaintiff has not failed to pursue existing remedies, denial of the possibility of recovery is unjustified.

393 A.2d at 296. The Supreme Court has also promulgated useful guidelines for determining "whether the considerations underlying 'official immunity' are effectively advanced." *Id.* at 295. The Court stated:

In order to discharge his duties effectively, a public servant must be free to exercise his judgment unhampered by the fear of unpredictable liability. Where the nature of the servant's decision or action in question is such that it may not

be measured against a predictable standard of care, the possibility of litigation may tend to discourage the making of clear choices. It is in the public interest to avoid such a chilling effect upon the servant's performance of his duties. Where, on the other hand, a standard of care may be defined and applied with relative ease, the public servant is not similarly deterred and the public interest in the protection of the official weakens. Also relevant to the strength of the public interest is the potential impact of the challenged decision or action upon the public as a whole or upon a large segment of it. The greater or more pervasive this impact, the stronger becomes the public interest in insuring unfettered decision-making.

*Id.* Moreover, the Court emphasized that only those persons who have "engaged in actionable conduct" should be subject to suit. Thus, those in the "chain of command" should not be subject to liability on any theory of vicarious liability. *Id.* at 295.

In *Cerino v. Twp. of Palmer,* —— Pa.Super. ——, 401 A.2d 770 (1979), the Pennsylvania Superior Court analyzed for the first time the contours of *DuBree. Cerino* involved a claim of official immunity by a township engineer whose alleged negligence had caused property damage to plaintiff's home. The court delineated its role under *DuBree* as follows:

Although *DuBree* has now restricted grants of official immunity to a case by case basis, we believe that, where the defense of immunity from suit is asserted by or on behalf of any public servant, the threshold inquiry, as in pre-*DuBree* cases, must concern "the nature of his duties, the importance of his office, and particularly whether or not he has policy making functions."

In considering the instant case, therefore, we must determine the nature and scope of Mr. Elo's duties as Township Engineer, and the course of conduct in which he was engaged at the time of the alleged tortious act.

*Cerino v. Twp. of Palmer, supra* at —— – ——, 401 A.2d at 772.

The court focused on the distinction between policymaking or discretionary duties and non policymaking or ministerial duties. Citing *Jackson v. Kelly,* 557 F.2d 735 (10th Cir. 1977), it explicated that "a duty is discretionary if it involves judgment, planning, or policy decisions." *Id.* —— Pa.Super. at ——, 401 A.2d at 773. And the fact that a duty involves expert evaluations does not necessarily render it discretionary. *Id.*

After analyzing the statutory definition of the duties of a township engineer, the court concluded:

The challenged acts have virtually no impact upon the public as a whole or upon a large segment thereof. Elo was merely supervising engineering planning and construction in the field, and not setting government policy regarding such matters.

*Id.* at ——, 401 A.2d at 775.

We are convinced that, when construing *DuBree* and *Cerino,* our role is to assess two factors: (1) the nature and scope of the duties of the Commonwealth employees; and (2) their course of conduct at the time they were engaged in their alleged tortious acts.

The second factor involves an assessment of whether the conduct in question can be measured against a predictable standard of care and whether the employee himself has engaged in actionable conduct.

In the instant case, the motions of the Commonwealth employees shed little light on the nature and scope of the duties of the employees involved. There is no documentation which would enable this court to conclude as a matter of law that any or all of these employees perform policymaking or discretionary functions so as to warrant attachment of official immunity. Similarly, we are unable to conclude that their conduct cannot be measured by a predictable standard of care, or that they were simply in a chain of command and committed no actionable conduct themselves. As such, we are unable to hold at this juncture that "the considerations underlying 'official immuni-

ty' [are] effectively advanced" by application of that doctrine to bar the instant action. 393 A.2d at 295. Such a conclusion must await receipt of further evidence at trial relative to the duties of the employees and the course of conduct they were engaged in at the time of the alleged tortious acts. Accordingly, the Commonwealth employees' motions for summary judgment must be denied.