600 P.2d 109 (1979)
James COOPER, Plaintiff-Appellant,
v.
John H. HOLLIS and Don Hostetter, d/b/a Don's Kawasaki and Towing Service, Defendants-Appellees.
No. 78-254.
Colorado Court of Appeals, Div. II.
June 7, 1979.
Rehearing Denied July 19, 1979.
*110 Smith & Selby, Kenneth A. Selby, Alamosa, for plaintiff-appellant.
Yegge, Hall & Evans, John P. Mitzner, Denver, for defendants-appellees.
ENOCH, Judge.
Plaintiff appeals from a directed verdict entered in favor of defendant. We reverse and remand for new trial.
Plaintiff, a well driller, parked his pickup truck, which was specially equipped for use in his drilling operations, on a private road in a rural area on a Friday in anticipation of drilling a well on that property the following Monday. On Sunday, defendant Hollis, while on duty as a police officer, spotted the pickup and, observing the expired license plates and inspection sticker as well as some evidence of vandalism, thought the car was abandoned. Hollis also believed the road to be a county road, and called defendant towing company to have the truck impounded in accordance with § 42-4-1103, C.R.S.1973. Later that afternoon Hollis ascertained that the truck belonged to Cooper Drilling, but made no effort to notify Cooper Drilling of the impoundment.
On Monday morning when employees of Cooper Drilling discovered the vehicle was missing, they reported to the sheriff that it was stolen and commenced to search for it. Plaintiff himself searched by air in a friend's airplane. On Tuesday, the sheriff informed plaintiff that the truck was in the possession of the towing company. The towing company suggested plaintiff call Hollis to obtain the release of the truck, but Hollis, believing the truck had been on public property, refused to authorize a release until he verified that the road was indeed a private road.
On Wednesday, Hollis determined that the truck had been parked on private property, but because the owner of the towing company was out of town, the truck was not returned to plaintiff until the next day. Plaintiff resumed work on Thursday, and subsequently brought this tort action. At the close of plaintiff's evidence, the trial court directed a verdict in favor of defendants, finding that Hollis was immune from suit under the doctrine of official immunity, and that plaintiff's evidence was too speculative as to the amount of damages.
Plaintiff first contends that the trial court erred in entering a directed verdict as to Hollis on the basis of official immunity. We agree.
We find no Colorado statute or case which prescribes the extent of immunity available to a police officer. Under the common law, public officials as a class have enjoyed varying degrees of immunity from lawsuits in order to encourage them in the administration of their duties and to protect them from harassing and embarrassing litigation for decisions made while performing those duties. Flournoy v. McComas, 175 Colo. 526, 488 P.2d 1104 (1971); Jackson v. Kelly, 557 F.2d 735 (10th Cir. 1975). Balanced against this policy is the concern for citizens who are injured by the acts of public officials. Because of these conflicting concerns the scope of immunity is *111 linked with the scope of authority held by the public official. See Smith v. Losee, 485 F.2d 334 (10th Cir. 1973), cert. denied, 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974). Smooth functioning of the governmental processes would be greatly impaired if officials were deterred in making their policy decisions by threats of lawsuits. This consideration is of lesser importance where the public official merely carries out the policy decisions of others. Thus an official enforcing the policy decisions of another is not afforded the same immunity as one making a policy decision. Jackson v. Kelly, supra.
To ascertain the availability of the immunity defense in a particular case, the court must first decide as a matter of law if the official's acts which give rise to the complaint are discretionary or not. If the acts are non-discretionary, thus not automatically affording the public official immunity, the court must apply a second test, that of balancing the consideration of harm to the individual citizen against the policy of promoting effective government. If the needs of the government outweigh the harm to citizens in the context of a particular case, then the immunity defense should be available. If the citizen's rights weigh more heavily, however, the public official is not immune from suit. Jackson v. Kelly, supra.
Therefore, in this case the first step is to determine if Hollis' actions were discretionary or not. As regards the issue of official immunity, the concept of discretionary acts has a specialized and limited meaning. In this limited sense, discretionary acts are those which are of a judgmental, planning, or policy nature. For example, in Belveal v. Bray, 253 F.Supp. 606 (D.Colo. 1966), the decisions of the Colorado State Parole Officer, the Parole Board Executive Director, the Penitentiary Warden, and the prison doctor were held to be discretionary, and thus those individuals were entitled to immunity.
Non-discretionary acts, on the other hand, are those that involve performance of a mandatory duty at the operational level. Jackson v. Kelly, supra. In this context, the action of a police officer in arresting a person has been held non-discretionary. See Bivens v. Six Unknown Named Agents, 456 F.2d 1339 (2d Cir. 1972). See also Butler v. United States, 365 F.Supp. 1035 (D.Haw.1973). Thus, although it is frequently said that a police officer exercises discretion when making decisions in the performance of his duties, this type of decision-making does not give rise to immunity because it does not involve the type of judgmental, planning, or policy-making decisions which traditionally have invoked this doctrine. See Jackson v. Kelly, supra, and Bivens v. Six Unknown Named Agents, supra.
Applying this criteria, we conclude that an officer carrying out the detailed provisions of § 42-4-1103, C.R.S.1973, is not required to make the kind of broad policy decision that is protected by official immunity. Therefore, we hold that a police officer ordering the impoundment of what appears to be an abandoned vehicle under § 42-4-1103, C.R.S.1973, is performing a non-discretionary act.
As to the second step, and contrary to the trial court's reasoning, we do not believe that denying immunity in this case will unduly hamper the governmental function. We reach this conclusion not only because we attach significance to an individual citizen's right to redress from torts committed by police officers, but also because a police officer when responding to an allegation of tortious conduct, may assert the defense of good faith and reasonableness. This defense is available in an action for false arrest and imprisonment. Restatement (Second) of Torts § 121(b) (1965). See also Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Bivens v. Six Unknown Named Agents, supra. We see no reason why the defense should not be available here.
Therefore we hold that it was error in this case for the trial court to have directed a verdict in favor of defendant Hollis on the basis of official immunity. On remand Hollis *112 may present as a defense evidence of his good faith belief that his conduct was lawful and that his belief was reasonable under the circumstances.
Plaintiff also asserts that the court erred in directing a verdict for defendants on the basis that damages were too speculative. Again we agree.
The rule which precludes recovery of uncertain and speculative damages applies only to situations where the fact of damage is uncertain, not where the amount of damages is uncertain. Russell v. First American Mortgage Co., Colo.App., 565 P.2d 972 (1977). Plaintiff need not present such facts as would formulate a positive and certain basis for calculating damages so long as there is some evidence sufficient to allow a reasonable estimate of the damages. Peterson v. Colorado Potato Flake & Manufacturing Co., 164 Colo. 304, 435 P.2d 237 (1967). We agree with the trial court that some of plaintiff's allegations of damages are wholly unsupported by the evidence. Plaintiff did, however, present some evidence of actual damage, particularly by his testimony that he was required to pay his employees during the period that they searched for the truck and awaited its return. It was therefore error for the court to direct a verdict on the basis that plaintiff did not provide an accurate method by which the jury could compute damages.
Judgment reversed and cause remanded for new trial.
PIERCE and SMITH, JJ., concur.