**Carlyle JOHNSON, Plaintiff,**

v.

**Doyle BUSBY, Donald Miller and Myron Gauger, Defendants.**

No. 79–1045.

United States District Court,
D. South Dakota, N. D.

March 29, 1982.

See also D.C. 520 F.Supp. 751.

vor and assessed damages in the sum of $1.00. Defendants thereafter moved for judgment notwithstanding the verdict, while plaintiff moved for a new trial on the issue of damages, or, in the alternative, a completely new trial. After careful consideration, the Court finds it can grant neither of the motions, and will let the verdict stand.

## DISCUSSION

### I

As the brief discussion in the Court's previous opinion, 520 F.Supp. 751 (D.S.D. 1981), indicated, this case arose from the denial of plaintiff's loan application by defendants, who were the Deuel County Committee members of the Farmers Home Administration of the United States Department of Agriculture, and thus, federal employees. Throughout the course of this litigation, defendants have persisted in the contention that, so long as they were acting within the scope of their authority, they are immune from liability under the Federal Tort Claims Act, 28 U.S.C. § 2680(a) and (h).[1] This argument is evidently the sole basis of defendants' present motion for judgment notwithstanding the verdict.

 There are, however, several reasons why this motion cannot be granted.[2] It is

. A. P. Fuller, Amundson & Fuller Law Offices, Lead, S. D., for plaintiff.

John J. Ulrich, Asst. U. S. Atty., Sioux Falls, S. D., for defendants.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

### CASE SUMMARY

A jury, at the close of the trial in this matter, returned a verdict in plaintiff's fa-

---

1. There seems to be no dispute that if defendants had acted *outside* the scope of their authority, there would be no immunity defense available to them. *See* 520 F.Supp. at 752.

2. Not the least of these reasons is the fact that, as this Court has come to conclude since its earlier opinion, the weight of authority is contrary to defendants' position on immunity. There is only one section in the Federal Tort Claims Act (FTCA) that provides that the FTCA is the exclusive remedy for any action arising out of a federal employee's acts, and that provision, § 2679(b), is inapplicable here. As the case of *Henderson v. Bluemink*, 511 F.2d 399, 404 (D.C.Cir.1974), said, "there is no statutory protection for federal employees from personal liability arising out of their own ... conduct while acting within the scope of their employment. The [FTCA] itself provides that a judgment against the United States shall oper-

ate as a bar to any action against the individual employee, but that section proscribes a double recovery, not a suit against the individual employee in the first instance." The only extent to which defendants might be considered to be immune for acts committed within the scope of their authority is if their acts involved the exercise of discretion. *Doe v. McMillan*, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1972); *Jackson v. Kelly*, 557 F.2d 735 (10th Cir. 1977); *Bivens v. Six Unknown Named Agents*, 456 F.2d 1339 (2d Cir. 1972).

The Court submitted the questions of scope of authority and discretion to the jury, giving this definition of a discretionary act:

Generally speaking, a government duty is "discretionary" as that term is used in these instructions, if it involves the exercise of judgment in the formulation of some plan or policy. A government duty is not "discretionary" if it involves the enforcement or

fundamental that, under Rule 50, a party may not "base his motion for a judgment notwithstanding the verdict on a ground that was not included in his motion for a directed verdict." 5A *Moore's Federal Practice*, 50–86 (1981). Upon an examination of the record, it appears that defendants' motion for directed verdict made at the close of plaintiff's case was based on defendants' assertions that plaintiff had failed to prove any damages as to Count II of his complaint, and that plaintiff had failed to prove certain elements of his case as to Count I, i.e., that the denial of the loan was malicious and groundless. Defendants do not appear to have anywhere mentioned in their motion for directed verdict the immunity defense they now assert; accordingly, this latter ground cannot now be considered in a motion for judgment notwithstanding the verdict.

 Further, a "defendant who fails to move for a directed verdict at the close of *all* the evidence . . . cannot present to the trial court a question as to the legal sufficiency of the evidence to support a verdict for his opponent." *Moore, supra,* (emphasis supplied). Defendants here, while making a motion for directed verdict at the close of plaintiff's case, failed to make such a motion at the close of all the evidence. There are certain case law exceptions to this rule, particularly "where: (1) The Court indicated that the renewal of the motion would not be necessary to preserve the party's rights; and (2) The evidence following the party's unrenewed motion for a directed verdict was brief and inconsequential." *Moore, supra,* at 50–90. Neither of these exceptions, however, are applicable here. Defendants' motion for judgment notwithstanding the verdict must therefore be denied.

administration of a mandatory duty imposed by law on the government official, even if the government official is required to use professional expert evaluation to carry out his mandatory duties.

The jury, in response to interrogatories, found that defendants did not act outside the scope of their authority in denying plaintiff's loan application, and that this denial was not a discretionary act. On all of the evidence, this

## II

This does not mean, however, that this Court must grant plaintiff's motion for a new trial. The Court submitted the case to the jury on a theory of tortious interference with prospective advantage. The Court, without objection from either party, instructed the jury that the elements of this claim were as follows:

1. That there existed an expectancy with the probability of future economic benefit for the plaintiff;

2. That defendants at the time they committed the acts complained of, knew of such expectancy, or should have known of it;

3. That, except for the conduct of the defendants, plaintiff was reasonably certain to have obtained a Farm Ownership loan from the Farmers Home Administration;

4. That the conduct of the defendants was intentional, malicious, and without justification;

5. That as a direct and proximate result, plaintiff suffered damage.[3]

Leaving aside the question of whether plaintiff proved element 3, about which this Court has serious doubts, the Court finds not a scintilla of evidence to support element 4 of plaintiff's case. "In contrast to motions for directed verdict or judgment notwithstanding the verdict, a motion for a new trial invokes the sound judicial discretion of the trial court." *Federal Procedure, Lawyer's Edition* § 62:707.

 Where a plaintiff, as here, has so completely failed to prove his case as to liability, it would be a clear abuse of this Court's discretion to allow him a new trial on the issue of either damages or liability.

Court cannot say that the evidence did not support these findings, and has no reason to disturb them now.

3. This instruction was drawn, in large part, from the ABA Model Jury Instructions for Business Tort Litigation, 44 (1980); *see also* the counts of plaintiff's complaint which were submitted to the jury, attached as Appendix A.

As the case of *Fireman's Fund Insurance Co. v. AALCO Wrecking Co., Inc.*, 466 F.2d 179, 187 (8th Cir. 1972) said, "[n]or should a new trial be granted where there is no valid or useful purpose for submitting the case to another jury. . . . When through judicial balancing the trial court determines that the first trial has resulted in a miscarriage of justice, the court may order a new trial, otherwise not." No miscarriage of justice occurred here. All that happened was that plaintiff received $1.00 more than he was entitled to.

■ In any event, the award of nominal damages by the jury was clearly authorized by SDCL 21–1–2: "When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages." The jury was instructed, among other things, that plaintiff was required to minimize his damages, and that there must be credible evidence to support his theory of damage and their method of computation. It is this Court's view that, given these instructions, the jury could have well found that plaintiff was entitled to only nominal damages. Thus, "as determined by [this Court] according to its sound discretion," *Federal Procedure, supra*, at § 58:14, the verdict was not contrary to the clear weight of the evidence. Neither does the Court accept the argument that the award was so inadequate as to "shock the judicial conscience . . . [or] the . . . verdict could have resulted from passion, prejudice, or compromise on the issue of liability." *Federal Procedure, supra*, at § 58:17. Plaintiff's motion must therefore be denied.

## APPENDIX A

| STATE OF SOUTH DAKOTA | ) | | IN CIRCUIT COURT |
|---|---|---|---|
| | ) | ss. | |
| COUNTY of DEUEL | | | THIRD JUDICIAL CIRCUIT |

CARLYLE JOHNSON, )
)
Plaintiff, )
)
v. ) COMPLAINT
)
DOYLE BUSBY, DONALD MILLER )
and MYRON GAUGER, )
)
Defendants. )

Comes now the Plaintiff and for his cause of action against the Defendants, states and alleges as follows:

### COUNT I.

#### I.

That Plaintiff is a resident of Toronto, Deuel County, South Dakota, where he has, at all times material herein, operated a farm and general store, the latter being known as "Johnsonville Store".

#### II.

That at all times material herein, Defendants Miller and Gauger were County Committeemen in and for the Deuel County office of the Farmers Home Administration, United States Department of Agriculture (FmHA) located in Clear Lake, South Dakota; and that Defendant Busby was, at all times material herein, County Supervisor of the Deuel County FmHA office in Clear Lake, South Dakota.

#### III.

That on the 9th day of February, 1976, Plaintiff made application for FmHA services wherein he requested a Farm Ownership (FO) loan through the Deuel County FmHA office with which to obtain the long

term financing Plaintiff needed to continue his then established farming operation.

#### IV.

That at the time said application was submitted, Defendants knew or should have known that without such long term financing, Plaintiff would not be able to continue his farming operation as it then existed, but that Plaintiff would be forced to sell a portion of his land and machinery and that he would not be able to continue renting additional land as he had done in the past.

#### V.

That on the 31st day of March, 1976, Defendants rejected Plaintiff's loan application. On February 6, 1979, Plaintiff learned that such rejection was willful, malicious and groundless.

#### VI.

That the reasons given for recommending rejection of Plaintiff's loan application by Defendants were groundless and that Defendants actions were willful and malicious and calculated to ruin Plaintiff's then existent farming and retail sales operations.

#### VII.

That as a direct and proximate result of Defendants willful and malicious actions the FmHA refused to grant Plaintiff's FO loan application, which they would otherwise have done, whereby Plaintiff suffered damages in the sum of Sixty Thousand Dollars ($60,000.00).

#### VIII.

That Defendants' actions in rejecting Plaintiff's loan application were done willfully and maliciously, as hereinabove alleged in Paragraphs VI and VII, and that by reason thereof, Plaintiff asks for punitive damages in the sum of One Hundred Thousand Dollars ($100,000.00).

### COUNT II.

#### I.

Plaintiff realleges Paragraphs I, II, III, IV, V and VI of Count I above, and incorporates them by reference herein.

#### II.

That if Plaintiff's loan application had been granted as it should have been, Plaintiff would have obtained said loan at an annual interest rate of 5% per annum.

#### III.

That by reason of Defendants rejection of Plaintiff's loan application, Plaintiff was unable to obtain an FO loan from the Farmer's Home Administration (FmHA) until February 1979, at which time the annual interest rate Plaintiff is required to pay is 8½%.

#### IV.

That as a direct and proximate result of Defendants' willful, malicious actions, Plaintiff will be required to pay additional interest on his FmHA FO loan over and above the amount he would have been required to pay had his loan application been approved, whereby Plaintiff has been damaged in the amount of Two Hundred Eighty Thousand Dollars ($280,000.00).