Frederick MORELAND,
Plaintiff-Appellee,

v.

The BOARD OF COUNTY COMMIS-
SIONERS OF the COUNTY OF LA
PLATA, a political and governmental
subdivision of the State of Colorado,
Defendant-Appellant.

No. 83CA1255.

Colorado Court of Appeals,
Div. III.

Nov. 21, 1985.

Rehearing Denied May 1, 1986.

Certiorari Granted (Board) Sept. 8, 1986.

Alan E. Johnson, Durango, for plaintiff-appellee.

Hall & Evans, Richard A. Waltz, Alan Epstein, Denver, for defendant-appellant.

METZGER, Judge.

Defendant, the Board of County Commissioners of La Plata County (the Board), appeals the trial court's entry of judgment on a verdict finding the Board negligent in failing to enforce the county's uniform building code and thereby causing injuries to plaintiff, Frederick Moreland. We affirm.

Ron McEwan began construction of a cabin in the spring of 1973. He dug a foundation and put reinforcing rods in place, but did not obtain a building permit pursuant to the then existing *La Plata County Resolution No. 1972–25*. This resolution was adopted pursuant to a zoning plan which required building permits in order to build or improve a structure. In effect, that resolution assessed a tax of $1 per $1,000 of value for the issuance of a building permit.

On December 31, 1973, the Board enacted *La Plata County Resolution No. 1973–130*, which adopted the Uniform Building Code of the International Conference of Building Officials (U.B.C.). The effective date of the resolution was January 1, 1974, and it provided that all construction work performed after that date must conform to the requirements of the U.B.C., with no exceptions.

Richard Yeager, La Plata County's first building inspector hired April 1, 1974, was charged with developing a building department and with enforcing the provisions of the U.B.C. and *La Plata County Resolution No. 1973–130*. Because of the lack of sufficient experienced personnel, the Board adopted a policy that existing residential dwellings and those dwellings whose construction had commenced prior to January 1, 1974, would not require building inspections, and were not to be inspected.

In the spring of 1974, McEwan was told by the Rural Electrical Association that he must obtain a building permit in order to receive temporary electrical power. McEwan obtained a building permit from the county on April 8, 1974. The permit was issued by the county assessor's office, which had previously issued permits pursuant to *La Plata County Resolution No. 1972–25*. No plans or blueprints were submitted as required by the U.B.C., nor were any required subsequent inspections of the dwelling performed.

However, Yeager did visit the McEwan cabin for other reasons in the summers of 1974 and 1975. During both visits a deck constructed by McEwan along the west and north sides of the cabin had been completed. During Yeager's 1974 visit there was no guard rail; during his 1975 visit the only guard rail was along the west edge of the deck. Much of the deck, including both the north and west sides, was as much as ten feet above the ground. This was a clear violation of the U.B.C., which required guard rails along decks built more than 30 inches from ground level.

Moreland's accident took place on March 10, 1982. He had gone to visit a friend who was renting McEwan's cabin. Early that evening, Moreland left the cabin, walked off the deck on the north side, and fell to the ground sustaining a spinal injury rendering him a paraplegic.

At trial the jury found the Board 58 percent negligent and Moreland 42 percent negligent. This appeal followed.

## I.

The Board first contends that, as a matter of law, it owed no duty to Moreland under the circumstances of this case. We disagree.

█ In order to prove negligence, a plaintiff must show that the defendant, including a public entity defendant, has a legally imposed duty or a standard of conduct to which the defendant must adhere. *Dare v. Sobule,* 674 P.2d 960 (Colo. 1984); *Justus v. Jefferson County School District R-1,* 683 P.2d 805 (Colo.App.1984) (cert. granted June 25, 1984). The duty may derive from either a statutory standard of conduct or from a judicial or common law standard. *Dare v. Sobule, supra.*

█ Whether a defendant owes a legal duty to a particular plaintiff and the scope of that duty are questions of law. *Metropolitan Gas Repair Service, Inc. v. Kulik,* 621 P.2d 313 (Colo.1980).

"Whether the law should impose a duty requires consideration of the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of an actor's conduct, the magnitude of the burden of guarding against the injury or harm, and the consequences of placing the burden upon the actor."

*Justus v. Jefferson County School District R-1, supra.*

## A.

### Statutory Duty

█ The Board argues first, and we agree, that *Quintano v. Industrial Commission,* 178 Colo. 131, 495 P.2d 1137 (1972) is dispositive as to the statutory duty issue. There, plaintiff alleged that a state statute requiring inspection of all factories imposed a duty upon the Colorado Industrial Commission and the individual commissioners to inspect. The supreme court held that the Industrial Commission as a whole was shielded by the doctrine of sovereign immunity and the individual commissioners owed no duty unless there was a clear indication that the General Assembly intended the statute to be used as a basis for civil liability. *Quintano v. Industrial Commission, supra.* See also *Martinez v. City of Lakewood,* 655 P.2d 1388 (Colo. App.1982). Therefore, no statutory duty may be found in the absence of a legislative intent to impose civil liability.

Accordingly, since the Board did not include a civil liability provision in the *La Plata County Resolution No. 1973-130,* no statutory duty may be implied.

## B.

### Common Law Duty

█ The Board also argues that no common law duty arises because this action involves nonfeasance. Moreland, on the other hand, argues that this is a case of misfeasance. We agree with Moreland that, since the Board took affirmative steps to pass and enforce a building code, its negligence and that of its employees could be found to be a cause of Moreland's injuries.

The issues involved here are similar to those in *Justus v. Jefferson County School District R-1, supra,* and *Gilbert v. City of Arvada,* 694 P.2d 847 (Colo.App.1984) (cert. granted Jan. 14, 1985). In *Justus,* the Jefferson County School District established a regulation which provided that only students in the upper elementary grades were permitted to ride their bicycles to school. The plaintiff, a first grader, was injured while riding his bike home from school. In reversing summary judgment for the district, this court ruled that, although the school district ordinarily would not have a duty to protect pupils off school premises, nevertheless, since the school had undertaken such a duty by its actions and regulations, liability could be found.

Similarly, in *Gilbert,* this court found a duty owed by the defendant city to an injured kindergartener. There, crossing guards were provided at the intersection where plaintiff was injured following the dismissal of afternoon classes, but no crossing guards were provided for the kindergartners who were dismissed earlier in the day. Again, the finding of a duty was

based upon an undertaking, providing crossing guards for some students, and a subsequent omission, failing to provide crossing guards for other students.

Likewise, in *Martinez v. City of Lakewood, supra,* the city was found to have assumed a duty to plaintiff by virtue of its having undertaken to correct an area of poor visibility.

Here, *La Plata County Resolution No. 1973–130* adopted the U.B.C., which clearly required decks more than 30 inches above ground level to be equipped with a guard rail. McEwan purchased a building permit after the effective date of that resolution. This permit stated that he was to comply with all "laws and regulations in the location, construction and erection" of the structure for which the permit was granted.

In *La Plata County Resolution No. 1973–125,* § XIV, entitled "penalty," the Board revealed its intent to apply the U.B.C. to those structures under construction on the date of its adoption, stating: "No person shall commence or *continue* any work in respect to any building ... in violation of the provisions of this Resolution." (emphasis added) Neverthless, similar to the situations in *Martinez, Justus,* and *Gilbert,* the Board here failed to follow its own regulations by adopting a policy that structures begun before January 1, 1974, would not be inspected.

■ Since the Board took affirmative action to alleviate the hazards of poor construction standards, a common law duty to use reasonable care to protect foreseeable plaintiffs arose. *See Martinez v. City of Lakewood, supra.* Consequently, the Board's decision not to enforce the inspection requirement as to structures begun before January 1, 1974, fails to negate the duty which arose by its affirmative action of adopting building standard regulations. *See Justus v. Jefferson County School District R–1, supra; Gilbert v. City of Arvada, supra.*

Accordingly, under common law principles, the issue of the Board's liability to

Moreland was a factual question properly submitted to the jury for resolution.

## II.

The Board, however, contends that the doctrine of official immunity and public policy considerations necessitate a finding of immunity under these facts. We disagree.

■ Under the doctrine of official immunity, immunity attaches if the official acts which give rise to the complaint are discretionary in nature, and, for purposes of the immunity doctrine, discretionary acts, are those acts of a judgmental, planning, or policy nature. *Cooper v. Hollis,* 42 Colo. App. 505, 600 P.2d 109 (1979). Here, however, we are concerned with sovereign immunity and its abrogation under the Governmental Immunity Act. Therefore, the doctrine of official immunity and the distinction between discretionary and non-discretionary acts is not applicable. *Mason v. State,* 689 P.2d 199 (Colo.App.1984) (cert. granted Oct. 22, 1984).

■ Moreover, we note that this case arises in the context of the Colorado Governmental Immunity Act. Section 24–10–101, et seq., C.R.S. (1982 Repl. Vol. 10). Section 24–10–104, C.R.S. (1982 Repl Vol. 10) provides that if:

"a public entity provides insurance coverage ... to insure itself against liability for any injury or to insure any of its employees against his liability for any injury resulting from an act or omission by such employee acting within the scope of his employment, then such public entity shall be deemed to have waived the defense of sovereign immunity...."

Here, the Board had obtained insurance to cover the instant liability. Therefore, the Board is not immune from suit.

## III.

■ Finally, the Board contends that the trial court erred in failing to instruct the jury in accordance with its tendered instruction concerning the affirmative de-

fense of honest and reasonable mistake. There was no error here.

The honest and reasonable mistake defense is a subpart of the common law doctrine of sovereign immunity. *See Flournoy v. McComas*, 175 Colo. 526, 488 P.2d 1104 (1971); *see also Winters v. City of Commerce City*, 648 P.2d 175 (Colo.App 1982). Where, as here, the Governmental Immunity Act applies, the public entity is deemed to have waived the defense of sovereign immunity. *Mason v. State of Colorado, supra*. Consequently, the public entity is to be treated as any other private litigant. *See Martinez v. City of Lakewood, supra*. Because no private litigant may assert the "honest and reasonable mistake" defense in a negligence action, W. Prosser & O. Keeton, *Torts* §§ 65–68 (5th ed. 1984), neither may the Board. Accordingly, the trial court correctly refused the tendered instruction.

The judgment is affirmed.

BERMAN and TURSI, JJ., concur.