Frederick B. STROTHMAN, Plaintiff,

v.

Adam GEFREH; Richard Paynter; Arthur Bleecher; Carl Panzarella; Marvin Harmatz; Jack Bunten; and John Wilcox, Defendants.

No. 82–K–32.

United States District Court,
D. Colorado.

Dec. 14, 1982.

David S. Yost, Denver, Colo., for plaintiff.

Robert N. Miller, U.S. Atty., and Nancy E. Rice, Asst. U.S. Atty., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is a motion to dismiss pursuant to Rule 12(b)(6), F.R.Civ.P., or in the alternative a motion for summary judgment, pursuant to Rule 56(b), F.R.Civ.P. Rule 12(b) states in part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

In the instant case, matters outside the pleadings have been presented, with the parties submitting briefs and accompanying affidavits in support of their respective positions. Accordingly, this motion will be treated as one for summary judgment and disposed of as provided by Rule 56.

Plaintiff, Frederick Strothman, was appointed an Administrative Law Judge (ALJ) for the Office of Hearings and Appeals, Social Security Administration, United States Department of Health and Human Services in April, 1980. In November, 1980, he was selected to be the Administrative Law Judge in Charge of the Denver Hearing Office, with managerial and administrative authority over all personnel assigned to the Denver Hearing Office. On October 31, 1981, plaintiff was relieved of his duties as Administrative Law Judge in Charge, which led to the filing of this complaint. Defendants are the remaining seven Administrative Law Judges assigned to the Denver Hearing Office during this time period.

Plaintiff's claims for relief are based on the common law tort of defamation, with additional allegations of conspiracy and extreme and outrageous conduct, which are related to the alleged defamation. The suit was originally filed in the District Court in and for the City and County of Denver, State of Colorado, and removed to the Federal District Court pursuant to 28 U.S.C. §§ 1441(a) and 1442(a)(1).

Plaintiff's first claim for relief alleges generally that defendants induced his termination by accusing him of being incompetent in his position as ALJ in Charge, by lodging unfounded complaints against him, and by harassing him in a variety of ways.

Claims numbered 2, 4, 6, 8, and 10 allege that Administrative Law Judges Harmatz (2 & 4), Paynter (6), Bunten (8), and Panzarella (10) "maliciously prepared and composed a writing of and concerning plaintiff," which contained false and defamatory statements, which are set forth in the complaint. Claims 3, 5, 7, 9, and 11 allege a conspiracy in committing the acts set forth. The twelfth claim is for extreme and outrageous conduct.

Defendants argue that the conduct complained of by plaintiff was within the scope of their employment and therefore defendants are absolutely immune from suit and liability. Plaintiff urges me to reject this conclusion by arguing that defendants were not acting within the scope of their employment, and by suggesting that administrative law judges are not covered by absolute immunity. Plaintiff also contends that because there is a factual dispute of whether defendants were acting within the scope of their employment, the issue cannot be decided on a motion for summary judgment. Both sides are incorrect.

It is well settled that summary judgment can be considered only if there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Rule 56, F.R.Civ.P. The defendants do not dispute that the statements were made. In fact, defendants' affidavits and other exhibits submitted to the court appear to be totally consistent with plaintiff's complaint concerning the language used in the writings. The disputed question is whether the statements were made within the scope of employment. The Tenth Circuit has held this to be a question of law rather than one of fact, and therefore does not preclude a motion for summary judgment. *Chavez v. Kelly,* 364 F.2d 113, 114 (10th Cir.1966), cited in *Sowders v. Damron,* 457 F.2d 1182, 1185 (10th Cir.1972) says:

> Mere allegations or statements to the effect that the allegedly slanderous statements were made outside the perimeter of the federal officer's duties do not make them so. Whether the statements made were within the officer's course of duty is a question of law which we decide on the uncontroverted facts. (citations omitted.)

█ It is also clear that the concept of immunity covers members of the executive branch, and that administrative law judges, as members of the executive branch, are included within the boundaries of this doctrine. In an often quoted opinion discussing the history and development of absolute immunity the Supreme Court stated:

> This court early held that judges of courts of superior or general authority are absolutely privileged as respects civil suits to recover for actions taken by them in the exercise of their judicial functions, irrespective of the motives with which those acts are alleged to have been performed, and that a like immunity extends to other officers of government whose duties are related to the judicial process.

*Barr v. Matteo,* 360 U.S. 564, 569, 79 S.Ct. 1335, 1338, 3 L.Ed.2d 1434, 1440 (1959). More recently the court specifically included administrative law judges when it determined that the role of the modern federal hearing examiner or administrative law judge is "functionally comparable" to that of a judge and shares some of the characteristics of the judicial process. *Butz v. Economou,* 438 U.S. 478, 514, 98 S.Ct. 2894, 2914, 57 L.Ed.2d 895, 920 (1978).

The question, however, goes beyond whether the ALJs were acting within the scope of their employment when the alleged defamatory statements were made. In reading the affidavits submitted by defendants, and copies of the letters containing the so-called maliciously prepared and composed writings, I find that in each instance the letters were written in response to either memos from ALJ Strothman and his superior, Carney, or earlier meetings and personal conferences on related subjects. In none of the writings complained of (claims 2, 4, 6, 8, and 10) did the ALJ in question initiate the correspondence. In each instance the letters involved managerial duties and performance evaluations of personnel in the Denver Hearing Office. The issue arose because of dissention between ALJ Strothman and the other ALJs and their support staff, concerning Strothman's expectations, and the manner in which he handled his administrative and supervisory duties.

Clearly an employee in any kind of job is expected or even obligated to respond to questions and comments by a supervisor concerning job performance and conditions within the office environment. Indeed, the affidavit of ALJ Bunten expresses this very thought:

> The statement quoted in paragraph 61 of the complaint was part of my memo to Judge Carney in response to a memo from her. I prepared this response out of a deep sense of concern for the mission of our office and considered it both my professional duty and *my duty as a long-term employee of the Social Security Administration* to bring to the attention of the appropriate responsible official the problems in this office. *It was an internal memorandum issued to attempt to remedy problems which were adversely affecting morale and productivity.* (Emphasis added.)

**44**

Other affidavits contain similar explanations. It is abundantly clear that the defendants were acting within the scope of their employment by responding to criticisms and questions relating to morale and productivity. A strikingly similar situation was evaluated by the Tenth Circuit when several civil service employees made statements against their newly appointed program director, which reflected on his fitness and efficiency in the discharge of his official duties. The court concluded:

> Surely these federal servants had a clear duty to report to proper authorities causes of disruption in the services they perform, or affecting such services, at the peril of being indifferent if not derelict in their responsibilities. Moreover, with one exception . . . the utterances were made internally in response to inquiries that on their face were manifestly proper.

*Preble v. Johnson,* 275 F.2d 275, 278 (10th Cir.1960).

 The case at bar has a lot in common with *Preble.* In each case the federal employees are acting within the scope of their employment. This may give rise to a qualified privilege which can only be overcome by proof that the disparaging statements were attended by malice. See *Williams v. Burns,* 463 F.Supp. 1278 (D.C.Colo.1979). But privilege in utterance and immunity from liability are significantly dissimilar.

 Judicial immunity is afforded to Administrative Law Judges only when they are functioning in a judicial capacity. It is the exercise of the judicial function which is sought to be protected rather than an elite class which is immunized at all times irrespective of the activity performed. In other words judicial immunity is based upon function rather than person.

In *Harlow v. Fitzgerald,* —— U.S. ——, ——, 102 S.Ct. 2727, 2735, 73 L.Ed.2d 396, 406 (1982), the Supreme Court said,

> . . . . Moreover, in general our own cases have followed a "functional" approach to immunity law. We have recognized that the judicial, prosecutorial, and legislative functions require absolute immunity. But the protection has extended no fur-

ther than its justification would warrant. In *Gravel,* for example we emphasized that Senators and their aides were absolutely immune only when performing 'acts legislative in nature,' and not when taking other acts even 'in their official capacity.' (citations omitted) Our cases involving judges and prosecutors have followed a similar line.

 When each defendant is acting in a judicial capacity, that is as an impartial arbiter of a case in controversy over which he or she has jurisdiction, then absolute judicial immunity applies. When, however, such employee of an executive department is engaged in activity relating to office management, morale and administration even in his or her "official capacity," judicial immunity does not apply.

The motion for summary judgment is denied.