Frederick B. STROTHMAN,
Plaintiff-Appellee,

v.

Adam GEFREH, Richard Paynter, Arthur Bleecher, Carl Panzarella, Marvin Harmatz, Jack Bunten, John Wilcox, Defendants-Appellants.

No. 83–1108.

United States Court of Appeals,
Tenth Circuit.

July 20, 1984.

Nancy E. Rice, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., and Janis E. Chapman, Asst. U.S. Atty., Denver, Colo., on the briefs), for defendants-appellants.

David S. Yost, Denver, Colo., for plaintiff-appellee.

Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

The only question presented by this appeal is whether defendants, seven of the eight Administrative Law Judges (ALJs) in the Denver Office of Hearings and Appeals of the Social Security Administration, are entitled to absolute immunity from tort

claims asserted against them by plaintiff, the remaining ALJ, and arising out of their respective positions as ALJs. The district court found that although defendants might be entitled to a qualified privilege, absolute immunity was unwarranted. The court therefore denied defendants' motion for summary judgment. We reverse in part and remand for further proceedings.[1]

Plaintiff Frederick Strothman was at the time of the events giving rise to this lawsuit Administrative Law Judge in Charge (ALJIC) of the Denver Hearing Office. In this capacity, Strothman was responsible for the overall management and effectiveness of the office, in addition to his duties as a judge. He had managerial and administrative authority over all personnel, including defendants. In October 1981, Strothman was relieved of his duties as ALJIC. He filed this suit in Colorado state court shortly thereafter, asserting claims of defamation against defendants Harmatz, Paynter, Bunten and Panzarella and claims of conspiracy, and extreme and outrageous conduct against all defendants. Strothman alleges that defendants conspired to induce his termination by accusing him of being incompetent, lodging unfounded complaints against him, and harassing him in a variety of ways.

The case was removed to federal district court pursuant to 28 U.S.C. §§ 1441(a) and 1442(a)(1) (1982). Defendants filed a motion to dismiss or in the alternative for summary judgment, contending inter alia that they were absolutely immune from liability. In denying the motion, the district court concluded that defendants were unprotected by judicial immunity because they were not functioning in a judicial capacity when they engaged in the conduct here at issue. See 552 F.Supp. 41 (D.Colo. 1982). On appeal, defendants do not contest the district court's finding as to the applicability of judicial immunity. They argue instead that under the doctrine of "official immunity" set forth in *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), and its progeny, they are absolutely immune from liability for the common law tort claims Strothman has asserted.

In *Barr*, the Acting Director of the Office of Rent Stabilization was sued for libel after he issued a press release stating the reasons why he intended to suspend two officers of the agency. In determining whether the defendant's conduct was absolutely privileged, the Court was called upon to balance:

"on the one hand, the protection of the individual citizen against pecuniary damage caused by oppressive or malicious action on the part of officials of the Federal Government; and on the other, the protection of the public interest by shielding responsible governmental officers against the harassment and inevitable hazards of vindictive or ill-founded damage suits brought on account of action taken in the exercise of their official responsibilities."

*Id.* at 565, 79 S.Ct. at 1336.

Tracing the history and purpose of the judicially created official immunity doctrine, the Court emphasized the necessity of freeing government officials from the fear of damage suits based on actions taken in the course of their duties—"suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vig-

---

**1.** In *Chavez v. Singer*, 698 F.2d 420, 421 (10th Cir.1983), we determined that an appeal from a summary judgment denial of absolute immunity falls within the collateral order doctrine of *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Because a defendant asserting absolute immunity "contests a plaintiff's right to 'hale him into court,'" we concluded that "[a] claim of absolute immunity ... should be determined before a trial on the merits." 698 F.2d at 421. Those circuits that have addressed the issue agree that in most circumstances orders denying absolute immunity are immediately appealable. *See, e.g., Williams v. Collins*, 728 F.2d 721, 724–26 (5th Cir. 1984); *Bever v. Gilbertson*, 724 F.2d 1083, 1086 (4th Cir.1984); *Evans v. Dillahunty*, 711 F.2d 828, 829–30 (8th Cir.1983); *Forsyth v. Kleindienst*, 700 F.2d 104, 105 (3d Cir.1983); *McSurely v. McClellan*, 697 F.2d 309, 315–16 (D.C.Cir. 1982).

orous, and effective administration of policies of government." *Id.* at 571, 79 S.Ct. at 1339. The Court found that in the case before it, the defendant's action constituted an appropriate exercise of discretion "within the outer perimeter of [his] line of duty." *Id.* at 575, 79 S.Ct. at 1341. It concluded that under the circumstances, the defendants' conduct was absolutely privileged, despite the plaintiff's allegations of malice. *Id.*

Numerous cases since *Barr* have applied the doctrine of official immunity, and this court has long recognized the general rule that federal officials are absolutely immune from liability for "alleged torts which result from acts done within the framework or scope of their duties which necessarily involve the exercise of discretion which public policy requires be made without fear of personal liability." *Garner v. Rathburn*, 346 F.2d 55, 56 (10th Cir.1965). *See also, e.g., Williams v. Collins*, 728 F.2d 721, 727 (5th Cir.1984); *Sami v. United States*, 617 F.2d 755, 768 & n. 23 (D.C. Cir.1979); *Huntington Towers, Ltd. v. Franklin National Bank*, 559 F.2d 863, 870 (2d Cir.1977), *cert. denied*, 434 U.S. 1012, 98 S.Ct. 726, 54 L.Ed.2d 756 (1978).

In *Jackson v. Kelly*, 557 F.2d 735 (10th Cir.1977) (en banc), this court set forth the appropriate analysis for determining claims of official immunity. Observing that the Supreme Court "has ·advised a discerning inquiry into whether the contributions of immunity to effective government in particular contexts outweigh the perhaps recurring harm to individual citizens," *id.* at 737 (quoting *Doe v. McMillan*, 412 U.S. 306, 320, 93 S.Ct. 2018, 2028, 36 L.Ed.2d 912 (1973)), we suggested that a proper evaluation of such claims requires "a careful inquiry into the nature of the alleged wrongful acts and scope of the accused official's duties." *Id.* at 736. We concluded on the basis of *Barr* and *Doe v. McMillan* that we must apply a "discretionary function test, and a direct balancing of the policies underlying the immunity doctrine in the context of each fact situation." *Id.* at 737.

■■■ Under *Jackson* and subsequent cases in this circuit, our inquiry is essentially threefold: (1) whether the defendant was acting within the scope of his official duties; (2) whether the act complained of involved the exercise of judgment or discretion; and (3) whether a grant of absolute immunity under the circumstances of the case would further the policies underlying the official immunity doctrine. In making this latter determination, a court should balance the extent to which maintenance of the action would pose a threat to effective government against the harm allegedly suffered by the plaintiff for which he seeks redress. *See id.* at 736–39. *See also Chavez v. Singer*, 698 F.2d 420, 422 (10th Cir. 1983); *G.M. Leasing Corp. v. United States*, 560 F.2d 1011, 1013–14 (10th Cir. 1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1485, 55 L.Ed.2d 516 (1978).

■■■ The first question then is whether defendants were acting within the scope of their employment when they committed the acts about which plaintiff complains. With respect to the defamation claims, Strothman alleges that defendants Harmatz, Paynter, Bunten, and Panzarella made certain false and malicious statements about him in writings that were read by the Regional Chief Administrative Law Judge, the ALJs' immediate superior. In affidavits filed in support of their motion for summary judgment on the immunity issue, defendants did not dispute that the statements were made. Rather, defendants attached the writings, showing that they were directed to Strothman himself or to the Regional Chief ALJ and were related to an ongoing dispute about Strothman's management of the Denver office. The district court found that defendants wrote the letters

"in response to either memos from ALJ Strothman and his superior, Carney, or earlier meetings and personal conferences on related subjects. In none of the writings complained of ... did the ALJ in question initiate the correspondence. In each instance the letters involved managerial duties and performance eval-

uations of personnel in the Denver Hearing Office. The issue arose because of dissension between ALJ Strothman and the other ALJs and their support staff, concerning Strothman's expectations, and the manner in which he handled his administrative and supervisory duties." 552 F.Supp. at 43.[2]

In light of these facts, the court found it "abundantly clear" that defendants were acting within the scope of their employment. *Id.* at 44. We agree that in "responding to criticisms and questions relating to morale and productivity," *id.*, defendants were acting well within the "outer perimeter of [their] line of duty." *Barr*, 360 U.S. at 575, 79 S.Ct. at 1341. *See Frommhagen v. Glazer*, 442 F.2d 338, 339–40 (9th Cir.1971), *cert. denied*, 404 U.S. 1038, 92 S.Ct. 711, 30 L.Ed.2d 729 (1972); *West v. Garrett*, 392 F.2d 543, 544 (5th Cir.1968); *Preble v. Johnson*, 275 F.2d 275, 277–79 (10th Cir.1960); *see also Chocallo v. Callaghan*, 496 F.Supp. 1261, 1261–62 (E.D.Pa.1980).

▆ Because defendants were acting within the scope of their employment in writing about Strothman, the "pertinent inquiry" becomes whether their conduct "involve[d] the exercise of discretion by a government officer which justifies the protection of the doctrine [of official immunity]." *G.M. Leasing Corp.*, 560 F.2d at 1013. Discussing the discretionary function test in *Jackson v. Kelly*, we explained that

> "[g]enerally speaking, a duty is discretionary if it involves judgment, planning, or policy decisions. It is not discretionary if it involves enforcement or administration of a mandatory duty at the operational level, even if professional expert evaluation is required.... The key is whether the duty is mandatory or whether the act complained of involved policy-making or judgment."

557 F.2d at 737–38 (citations omitted). Stated another way, "the rule is that if a government official in performing his statutory duties must act without reliance upon a fixed or readily ascertainable standard, the decision he makes is discretionary.... Conversely, if there is a standard by which his action is measured, it is not [discretionary]." *Barton v. United States*, 609 F.2d 977, 979 (10th Cir.1979). *See also Dalehite v. United States*, 346 U.S. 15, 34–36, 73 S.Ct. 956, 967–968, 97 L.Ed. 1427 (1953); *Howard Routh & Sons v. United States*, 668 F.2d 454, 456–58 (10th Cir.1981).

In the instant case, defendants' complaints to their superior about Strothman clearly involved policy decisions and judgment and were not made pursuant to a fixed standard or mandatory operational duty. Moreover, unlike the government doctor in *Jackson*, who exercised medical but not governmental judgment and discretion in treating his patients, *see* 557 F.2d at 738–39, these defendants exercised discretion in a manner directly related to their official governmental functions when they appraised the administration of the Denver Hearing Office.

▆ Finally, in view of the circumstances of this case, we are convinced that a grant of absolute immunity to defendants would further the policies underlying the *Barr* doctrine. Although it would be regrettable to deny recovery to a plaintiff who had in fact been damaged by a government official's tortious conduct, it is better "to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation...." *Barr*, 360 U.S. at 572, 79 S.Ct. at 1340 (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir.1949). *See also Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution*, 566 F.2d 289, 294 (D.C.Cir.1977) (en banc), *cert. denied*, 438 U.S. 915, 98 S.Ct.

---

**2.** In making these findings, the district judge focused on the allegedly defamatory writings. He failed to address whether defendants were acting within the scope of their employment with regard to conspiracy and extreme and outrageous conduct. We thus exclude those claims from our present analysis and concern ourselves for the moment only with the alleged defamations.

3144, 57 L.Ed.2d 1160 (1978). In this case, Strothman's interest in compensation clearly is outweighed by the substantial public benefit that derives from the uninhibited internal scrutiny of government agencies. The effective functioning of government requires that officials in defendants' position be free to offer comments and criticisms regarding internal administrative matters without fear of potentially chilling damage suits. *Cf. Lawrence v. Acree,* 665 F.2d 1319, 1327 (D.C.Cir.1981); *Chafin v. Pratt,* 358 F.2d 349, 352–54 (5th Cir.), *cert. denied,* 385 U.S. 878, 87 S.Ct. 159, 17 L.Ed.2d 105 (1966); *Preble,* 275 F.2d at 277–79; *Newkirk v. Allen,* 552 F.Supp. 8, 11 (S.D.N.Y.1982).

■ From the trial judge's citation to *Harlow v. Fitzgerald,* 457 U.S. 800, 810–11, 102 S.Ct. 2727, 2734–35, 73 L.Ed.2d 396 (1982),[3] and his disposition of the case solely on the issue of judicial immunity, we perceive that he confused those cases where a government official is accused of committing a *common law tort* with those cases involving charges of violating the *federal constitution* or a *federal statute.* This area of the law is, indeed, confusing. However, *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), makes clear that two distinct lines of cases exist. After discussing those decisions involving suits against government officials for common law torts, culminating in *Barr,* the Court in *Economou* discussed the separate line of cases which establish that federal officials in general are not absolutely immune from claims that they violated the constitution or acted outside their federal statutory authority, unless they are performing a narrowly defined judicial, executive, or legislative function. The Court concluded:

> "The plurality opinion and judgment in Barr also appear—although without any discussion of the matter—to have extended absolute immunity to an officer who was authorized to issue press releases, who was assumed to know that the press release he issued was false and who

therefore was deliberately misusing his authority. *Accepting this extension of immunity with respect to state tort claims, however, we are confident that Barr did not purport to protect an official who has not only committed a wrong under local law, but also violated those fundamental principles of fairness embodied in the Constitution.* Whatever level of protection from state interference is appropriate for federal officials executing their duties under federal law, it cannot be doubted that these officials, even when acting pursuant to congressional authorization, are subject to the restraints imposed by the Federal Constitution."

*Id.* at 494–95, 98 S.Ct. at 2905 (emphasis added and footnotes omitted). Thus, although *Economou* and *Harlow* have made clear that only a qualified immunity is available to federal officials who have violated *constitutional or federal statutory rights,* those decisions do not purport to alter the *Barr* rule of absolute immunity from liability for *common law torts. See Harlow,* 457 U.S. 800, 807–08, 102 S.Ct. 2727, 2732–33, 73 L.Ed.2d 396 (1982); *see also Hall v. United States,* 704 F.2d 246, 249 (6th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983); *George v. Kay,* 632 F.2d 1103, 1105–06 (4th Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1738, 68 L.Ed.2d 224 (1981); *Miller v. DeLaune,* 602 F.2d 198, 199–200 (9th Cir. 1979); *Evans v. Wright,* 582 F.2d 20, 21 (5th Cir.1978); *Newkirk v. Allen,* 552 F.Supp. at 10 n. 2.

In this case, Strothman alleges only common law tort claims against defendants. With respect to the defamation claims, we already have determined under the *Jackson v. Kelly* analysis that the four defendants accused of defamation are entitled to absolute immunity. However, Strothman also has alleged that all defendants conspired to remove him from office improperly, and engaged in extreme and outrageous conduct, which actions if proven may constitute separate torts in Colorado. The

---

**3.** *See* 552 F.Supp. at 44.

record is insufficiently developed on these latter claims for us to determine as a matter of law whether defendants would be absolutely immune from liability for such torts. Consequently, the case must be remanded for further proceedings.

The case is reversed and remanded with directions to enter judgment in favor of defendants Paynter, Panzarella, Harmatz, and Bunten on the defamation claims, and to consider further the claims of absolute immunity with respect to all remaining claims and defendants.