**GENERAL ELECTRIC COMPANY,**
Plaintiff-Appellant,

v.

**UNITED STATES of America; Andrew W. Klassett; Philip H. Welty, Jr.; Thomas J. Vegella; Raymond Mullinix and John Anthony Vilgos, Defendants-Appellees.**

No. 86–2041.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 10, 1986.

Decided March 12, 1987.

Edward C. Mackie (Patrick G. Cullen; Rollins, Smalkin, Richards & Mackie, on brief), for plaintiff-appellant.

Richard K. Willard, Asst. Atty. Gen. (Breckinridge L. Willcox, U.S. Atty., John F. Cordes, Carlene V. McIntyre, Appellate Staff Attys., Dept. of Justice) for defendants-appellees.

Before RUSSELL and HALL, Circuit Judges, and ROBERT G. DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.

PER CURIAM:

Two employees of the National Institutes of Health (NIH) were injured while repairing an electrical transformer manufactured by the General Electric Company (General Electric). One of the employees died as a result of his injuries. The surviving employee and the deceased employee's wife filed suit against General Electric on theories of negligence, breach of warranty and strict liability; this suit was ultimately settled. General Electric then filed a third-party action seeking to hold the United States and five individual defendants liable for indemnity and contribution on the theory that the defendants had negligently failed to promulgate or adhere to safety regulations applicable to electrical transformers.

The District Court dismissed the claim against the United States, and entered summary judgment in favor of the individual defendants. General Electric appealed those decisions. This Court hereby affirms the decision of the district court.

## I. *Factual Background and Proceedings Below*

On July 27, 1982, James Layman and Lloyd Thompson, high-voltage electricians employed by NIH were injured by a short circuit while they were replacing transistors in a transformer designed and manufactured by General Electric. Mr. Thompson died of his injuries approximately one month later. Mr. Layman was permanently injured and disfigured.

As Thompson and Layman were injured in the course of their federal employment, they received workers' compensation benefits under the Federal Employees' Compensation Act (FECA), 5 U.S.C. § 8101–8151. In addition, Thompson's wife and Layman and his wife filed suit against General Electric in the United States District Court in Maryland alleging that the injuries had been caused by the defective design of the transformers. General Electric settled that suit and then brought the instant third-party action for indemnity and contribution against the United States pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680, and against five individual NIH employees, alleging diversity jurisdiction. General Electric alleged that the United States, and the individual defendants, who are NIH supervisors and administrators, failed to exercise due care to ensure the safety of the injured employees, and that the injuries were a direct result of the negligence of the defendants.

On February 21, 1985, the District Court dismissed General Electric's claims against the United States on the grounds that state law, which governs in a case brought pursuant to the FTCA, precludes third-party actions for contribution or indemnity against a private employer that has provided compensation for its employees in accordance with the Maryland Workmen's Compensation Act.

On March 13, 1986, the District Court granted the individual defendants' motion for summary judgment. The District Court held that the individuals were "[g]overnment officials [who] are immune from civil tort suits arising out of events

which are within the scope of their employment." Joint Appendix, at 254–55. The court held that the negligent acts alleged to have been committed by the individual defendants occurred within the scope of their government employment, Joint Appendix, at 268, and that the individual defendants therefore were not subject to common-law liability for their negligence.

General Electric appealed both decisions to this Court. We affirm.

## II. *Immunity of the United States*

■ The District Court correctly held that the United States was immune from appellant's claims for contribution and indemnity. General Electric's claim against the United States was brought pursuant to the FTCA. The FTCA is a limited waiver of sovereign immunity which grants the federal district courts exclusive jurisdiction over suits for money damages against the United States for "personal injury or death caused by the negligent act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Thus, as a general rule, the tort liability of the United States is determined by reference to the law of the state in which the act or omission occurred. The accident which was the basis of the original suit against General Electric occurred in Bethesda, Maryland; hence, Maryland law controls the liability of the United States for contribution or indemnity.

The District Court held that the United States would not have been liable under state law, because it was exempt from liability under the Maryland Workmen's Compensation Statute, Md.Ann.Code art. 101, §§ 1–102. The statute provides that em-

ployers who comply with its provisions for the compensation of injured employees and their dependents are not subject to common-law liability. *Id.* § 15. Should the employer fail to provide compensation in accordance with the statute, the injured employee or his legal representative may bring suit for the amount of compensation prescribed by statute or may seek an award of common-law damages. *Id.*

The question presented by these facts is whether a private employer, under like circumstances,[1] could be liable for contribution or indemnity under Maryland law. The United States complied with the FECA, the federal law that provides workers' compensation to federal employees. A similarly situated private employer, then, would not comply with FECA, but would comply with the state worker's compensation law. Thus, a private employer "in like circumstances" would have complied with the Maryland Workers' Compensation statute. *In Re All Maine Asbestos Litigation (PNS Cases)*, 772 F.2d 1023, 1028 (1st Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1994, 90 L.Ed.2d 675 (1986). A private employer that had contributed to the Maryland Worker's Compensation program would be entitled to invoke the exclusivity provision of that statute to bar third-party claims for contribution and/or indemnity like that advanced by General Electric. The statute provides, in pertinent part:

> Every employer subject to the provisions of this article, shall pay or provide as required herein compensation according to the schedules of this article for the disability or death of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment without regard to fault as a cause of such injury ...

1. It should be noted that the statute uses the term "like circumstances", rather than "the same" or "identical" circumstances. Congress' choice of this term suggests to this Court that it is correct to draw an analogy between the United States' compliance with FECA, and a private employer's compliance with the Maryland worker's compensation law. *See In Re All Maine Asbestos Litigation (PNS Cases)*, 772 F.2d 1023, 1028 (1st Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1994, 90 L.Ed. 675 (1986).

The liability prescribed by the last preceding paragraph shall be exclusive, except that if an employer fails to secure the payment of compensation for his injured employees and their dependents as provided in this article, an injured employee or his legal representative in case death results from the injury, may, at his option, elect to claim compensation under this article, or to maintain an action in the court for damages on account of such injury.

Md.Ann.Code art. 101, § 15. The effect of this provision is to make the complying employer immune from common-law suits for negligence, because "the Workmen's Compensation Act is a substitute for the employer's common-law liability for negligence, subject to his common law defenses, and creates an absolute, but limited, liability regardless of fault, such liability upon a conforming employer being exclusive." *Flood v. Merchants Mutual Insurance Co.*, 230 Md. 373, 187 A.2d 320, 322 (Md. 1963) (citations omitted).

Section 15 also prohibits a third party who was held liable to the injured employee from suing the employer for contribution. *Mason v. Callas Contractors, Inc.*, 494 F.Supp. 782, 784 (D.Md.1980) (*citing Baltimore Transit Co. v. State*, 183 Md. 674, 39 A.2d 858 (1944)). In the latter case, the Maryland Court of Appeals prohibited the defendant from impleading the plaintiff's employer (the City of Baltimore) on the grounds that the employer's liability was limited by the exclusivity provision of the workers' compensation act and stated that

"[t]he employer should not be held liable indirectly in an amount that could not be recovered directly, for this would run counter to one of the fundamental purposes of the compensation law." *Baltimore Transit Co.*, 39 A.2d at 861.

▪ This Court finds that a similarly situated private employer would be immune from common law damage suits arising out of injuries negligently inflicted on its employees. The United States, by virtue of its compliance with the applicable worker's compensation law, FECA, is entitled to claim the same immunity.[2] To hold otherwise would be to place the United States in a position less favorable than that of any private employer under the Maryland statute. It would be to allow the State of Maryland to compel the United States to comply with state workers' compensation law, which it lacks the power to do. *Gianuzzi v. Doninger Metal Products*, 585 F.Supp. 1306, 1309 (W.D.Pa.1984). *See also Griffin v. United States*, 644 F.2d 846, 847 (10th Cir.1981). Finally, it would discourage the United States from providing compensation for its injured employees and their dependants pursuant to the more generous FECA provisions.

### III. *Immunity of Individual Defendants*

The appellant argues that the immunity of the individual defendants is determined by whether their functions can be characterized as "discretionary" or "ministerial."[3] In so doing, the appellant ignores

---

**2.** FECA's exclusivity provision, by its terms, does not bar third-party indemnity actions against the United States. 5 U.S.C. § 8116(c); *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 195–96, 103 S.Ct. 1033, 1037, 74 L.Ed.2d 911 (1983). The FTCA's limited waiver of sovereign immunity permits the maintenance of "third party claims against the government for losses incurred by third parties as the result of injuries to federal employees covered by FECA where other applicable substantive law grants a right of recovery." *In Re All Maine Asbestos Litigation*, 772 F.2d at 1027. The FTCA permits the United States to be held liable only to the same extent that a private party would be liable under like circumstances, and mandates the application of state substantive law to determine the extent of that liability. 28 U.S.C.

§§ 1346(b), 2674. It is for this reason that the exclusivity provision of the Maryland statute, rather than that of FECA, applies to this case.

**3.** The appellant contends that the official's immunity depends upon whether the official's act was "discretionary" or "ministerial." Brief of Appellant, at 8–11. To accept this contention would be to disregard the Supreme Court's statement that "[t]he privilege is not a badge or emolument of exalted office." *Barr*, 360 U.S. at 572, 79 S.Ct. at 1340. In *Barr*, the Court expressly stated that "[i]t is not the title of his office but the duties with which the particular officer sought to be made to respond in damages is entrusted—the relation of the act complained of to 'matters committed by law to his control or supervision' . . .—which must provide

the well-established distinction between the executive official's absolute immunity from common-law tort liability, and qualified immunity from liability for constitutional torts.

■ Government officials enjoy varying degrees of immunity from liability for actions taken within the scope of their employment. The immunity of federal legislators is conferred by the Speech and Debate Clause of the United States Constitution. *Scheuer v. Rhodes,* 416 U.S. 232, 240, 94 S.Ct. 1683, 1688, 40 L.Ed.2d 90 (1974); *Barr v. Matteo,* 360 U.S. 564, 569–70, 79 S.Ct. 1335, 1338, 3 L.Ed.2d 1434 (1959). The immunity of judicial and executive officers, however, was created and developed by the common law. *Scheuer,* 416 U.S. at 241, 94 S.Ct. at 1688; *Barr,* 360 U.S. at 569–70, 79 S.Ct. at 1338. With respect to an executive officer, the scope of the immunity is determined not only by the function of that official, but by the nature of the acts for which the plaintiff seeks to impose liability on that official.

According to the United States Supreme Court, the immunity enjoyed by high-ranking executive officials with substantial discretionary authority is far broader than that conferred upon officials of lower rank who have fewer occasions to exercise discretion in the normal course of their duties, *Barr,* 360 U.S. at 573, 79 S.Ct. at 1340, but is not restricted to discretionary rather than ministerial functions. *Id.* at 573–75, 79 S.Ct. at 1340–41. Rather, the immunity from suit applies to actions "within the outer perimeter of [the official's] line of duty." *Id.* at 575, 79 S.Ct. at 1341.

In *Barr,* the Supreme Court held that an executive official has absolute immunity for actions taken within the scope of his duties. In a subsequent case, *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Court held that this absolute immunity did not extend to acts alleged to be constitutional torts,[4] but that, as a general rule, executive officials charged with constitutional violations enjoy only a "qualified immunity" from damage liability. *Butz,* 438 U.S. at 508, 98 S.Ct. at 2911; *see also id.* at 507, 98 S.Ct. at 2911. The scope of the qualified immunity accorded to federal officials was the same as that accorded to state officials charged with constitutional violations by the Court's prior decision in *Scheuer,* where the Court held that such immunity was appropriate in cases in which the defendant official had had reasonable grounds for the action taken, as well as a good faith belief in the legality or constitutionality of the action taken. *Scheuer,* 416 U.S. at 247–48, 94 S.Ct. at 1691–92.[5]

The development of the more limited "qualified immunity" for defendant officials in constitutional tort suits is entirely consistent with the holding in *Barr* that absolute immunity applies when the indi-

the guide in delineating the scope of the rule which clothes the official acts of the executive officer with immunity from civil defamation suits." *Id.* at 573–74, 79 S.Ct. at 1340–41 (citation omitted). The Court concluded that "the fact that the action ... taken was within the outer perimeter of [the official's] line of duty is enough to render the privilege applicable." *Id.* at 575, 79 S.Ct. at 1341. The Court recognized that the duties of a particular official may encompass discretionary and/or ministerial functions, *id.,* but did not thereby restrict the immunity to discretionary acts. *Id.* ("[T]he same considerations which underlie the recognition of the privilege as to acts done in connection with a mandatory duty apply with equal force to discretionary acts at those levels of government where the concept of duty encompasses the sound exercise of discretionary authority."). Thus, even if we were to accept appellant's contention that the individual defendants negligently discharged their ministerial, nondiscretionary functions, this would not resolve the immunity question now before us.

**4.** *Barr,* unlike *Butz,* did not discuss "[t]he liability of officials who have exceeded constitutional limits." *Id.* at 495, 98 S.Ct. at 2905. *See also id.,* at 495 n. 22, 98 S.Ct. at 2905 n. 22, ("We view this case, in its present posture, as concerned only with constitutional issues.").

**5.** The Court subsequently clarified the standard for applying "good faith immunity" in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), holding that the "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. (citations omitted).

vidual defendant is charged with a common-law tort. *Butz,* 438 U.S. at 507, 98 S.Ct. at 2911. It is clear that an act which an official knew or reasonably should have known, *Harlow,* 457 U.S. at 815, 102 S.Ct. at 2736, would violate the plaintiff's constitutional rights is not "within the outer perimeter of the [official's] line of duty." *Barr,* 360 U.S. at 575, 79 S.Ct. at 1341. A federal official derives his authority from the federal government, which in turn, enjoys only that measure of power conferred upon it by the Constitution of the United States. As a general rule, violation of the Constitution cannot normally be construed as action undertaken within a federal official's line of duty. Thus, there is no contradiction in the establishment of separate standards of immunity when common-law and constitutional torts are alleged. Indeed, this Court has construed the aforementioned Supreme Court cases as creating two separate standards of immunity. *Wallen v. Domm,* 700 F.2d 124, 126 (4th Cir.1983) (granting absolute immunity to Veteran's Administration employee "since no constitutional violation is involved in this case, the activity complained of falls well within the limits of an absolute immunity claim."); *George v. Kay,* 632 F.2d 1103, 1105 (4th Cir.1980) ("In *Butz,* the [Supreme] Court narrowed the scope of the privilege allowed in ... *Barr,* holding that although government officials charged with tortious acts under state law are still allowed an absolute immunity privilege if the acts complained of were within the outer perimeter of their authority, those charged with unconstitutional acts are entitled only to a qualified immunity."), *cert.*

*denied,* 450 U.S. 1029, 101 S.Ct. 1738, 68 L.Ed.2d 224 (1981).

In the instant case, General Electric's claim for indemnity and contribution is founded on the alleged negligence of the individual defendants. Joint Appendix, at 10 ("The injuries to James Richard Layman and the injuries to and death of Lloyd F. Thompson were caused solely by the negligence of Defendant employees of the National Institutes of Health as aforesaid, without any negligence on the part of the plaintiff thereunto contributing."). Recent Supreme Court case law clearly indicates that allegations of a defendant's negligence do not state constitutional claims against such a defendant. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1982); *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).[6] Federal officials may be held liable for constitutional torts to the same extent that state officials may be held liable for constitutional violations under § 1983. *Butz,* 438 U.S. at 503–04, 98 S.Ct. at 2909. Further, federal and state officials enjoy the same immunity from liability for constitutional torts. *Id.* at 504, 98 S.Ct. at 2909 ("[w]ithout congressional directions to the contrary, we deem it untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials."). Thus, we find that if an allegation of negligence does not state a cause of action against a state official under § 1983, then it also does not constitute an allegation that a federal official has committed a

---

**6.** In *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Supreme Court overruled its holding in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In *Daniels,* an inmate sued a deputy sheriff to recover for injuries sustained when the inmate slipped on a pillow negligently left on the jail stairs by the defendant sheriff. The Fourth Circuit upheld the district court's entry of summary judgment for the defendant. The Supreme Court affirmed, holding that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property." *Daniels v. Williams,* 106 S.Ct. at 663. *Accord Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668,

88 L.Ed.2d 677 (1986). *Daniels* and *Davidson* were cases in which inmate plaintiffs brought suit against state prison officials pursuant to 42 U.S.C. § 1983, which provides in pertinent part,

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

constitutional tort. Where no constitutional tort is alleged, the defendant official is absolutely immune from suits based on common-law torts, provided that the alleged tort was an action within the outer perimeter of the official's line of duty.

The District Court, applying the legal standard discussed above, determined that the alleged negligence of each of the individual defendants was within the outer perimeter of that defendant's line of duty. Joint Appendix, at 268. We hereby adopt the finding of the District Court, after a detailed inquiry into the job responsibilities of each of the individual defendants, that "[a]ll of the allegations speak to the individual defendants' duties of safely and properly maintaining the electrical functions of the NIH physical plant," and therefore "the negligence alleged to have been committed by [the individual defendants] occurred within the scope of their government employment." *Id.* Therefore, we conclude that the District Court properly granted summary judgment in favor of the individual defendants on the grounds of their absolute immunity from liability for common-law torts committed in the course of government employment.

We realize that application of the absolute immunity doctrine may give rise to harsh results. The Supreme Court has indicated, however, that the immunity doctrine attempts to strike a balance between "the protection of the individual citizen against pecuniary damage caused by oppressive or malicious action on the part of officials of the Federal Government; and ... the protection of the public interest by shielding responsible governmental officers against the harassment and inevitable hazards of vindictive or ill-founded damage suits brought on account of action taken in the exercise of their official responsibilities." *Barr*, 360 U.S. at 565, 79 S.Ct. at 1336. This balancing of "fundamentally antagonistic social policies" gives rise to "occasional instances of actual injustice which will go unredressed, but ... that price [is] a necessary one to pay for the greater good." *Id.* at 576, 79 S.Ct. at 1342. This Court has agreed. *Wallen v. Domm*,

700 F.2d at 126 ("It has been determined that the proper and effective administration of public affairs in general ... outweighs redress of the occasional wrong caused by an official during activity otherwise within the official's authority." (citations omitted)).

Accordingly, the judgment of the District Court of Maryland dismissing the appellant's claims against the United States, and granting summary judgment in favor of the individual defendants, is hereby AFFIRMED.

AFFIRMED.