Joe JORDAN, Plaintiff,

v.

Jennifer C. HUDSON, et al.,
Defendants.

Civ. A. No. 88–0036–R.

United States District Court,
E.D. Virginia,
Richmond Division.

July 21, 1988.

Robert P. Geary, Richmond, Va., for plaintiff.

Debra J. Prillaman, Asst. U.S. Atty., Richmond, Va., for defendants.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This case comes before the Court on the defendants' motion to dismiss or, alternatively, for summary judgment. For the reasons set forth below, the Court grants the motion for summary judgment because the defendants as federal employees are entitled to absolute immunity from suit under the facts of this case. In addition, the plaintiff also fails to state a claim for violation of Va.Code §§ 18.2–499 and 18.2–500.

### I.

All parties to this litigation are employees of the U.S. Postal Service. The plaintiff, formerly the postmaster in South Hill, Va., is presently a distribution clerk in a postal facility in Petersburg. The defendants Jennifer C. Hudson, James A. Kidd, and Ashley G. Watson III, are clerks assigned to the post office in South Hill.

The events of which plaintiff complains began in April of 1985, as explained in the Declarations of Wayne Boothe and defendant Jennifer Hudson. On April 15, 1985, Hudson informed an EEO counselor that Jordan, then her immediate supervisor as the postmaster of South Hill, had sexually harassed her. Ms. Hudson's allegations soon came to the attention of Mr. Leon Waters, the Sectional Center Manager and Postmaster who was Mr. Jordan's supervisor. On April 26, 1985, Mr. Waters signed two letters regarding the allegations of sexual harassment by Mr. Jordan. The first letter, sent to Jordan, relieved him of his duties as postmaster and placed him in an off-duty status. The second, sent to the Inspector in Charge of the Office of the Postal Inspector, in Richmond, requested an investigation into the claims which had been made against Mr. Jordan.

In response to that request, two postal inspectors conducted several interviews. Ms. Hudson was interviewed on April 29. The subject of the interview concerned her allegations that she had been the victim of sexual harassment by Mr. Jordan and her knowledge regarding other times when Jordan had allegedly sexually harassed both employees and customers of the Postal Service.

In response to information revealed by the investigation, Postal Service authorities initially proposed that Mr. Jordan be discharged. Following further administrative proceedings within the agency, the Service ultimately adopted a final decision on November 13, 1985, to demote Mr. Jordan to the position of distribution clerk and reassign him to work at the Post Office in Petersburg. Under the statutory remedies authorized by 5 U.S.C. §§ 7701 *et seq.*, Jordan appealed the adverse personnel action to the Merit Systems Protection Board (MSPB). An administrative hearing was held by a board officer on February 6, 1986.

At that hearing, a number of Postal Service employees were called to testify, including the defendants in this litigation. Under oath and subject to cross-examination by Jordan's attorney, the defendants Hudson, Kidd and Watson testified that Jordan had engaged in acts of sexual harassment against women at the South Hill post office. In a decision rendered on March 18, 1986, the hearing officer rejected Jordan's appeal and upheld the Service's action in transferring and demoting Jordan. Jordan's petition for review of that decision was rejected by the full MSP Board. On appeal, the Court of Appeals for the Federal Circuit affirmed the Board's decision in all respects.

Mr. Jordan filed the present action in the Circuit Court of Mecklenburg County in January of 1988. The defendants promptly removed the litigation to this Court. In summary, Jordan's complaint ("motion for judgment") asserts that Ms. Hudson made false statements and representations to the investigating postal inspectors that she had been sexually harassed by Jordan, and that Messrs. Kidd and Watson had told her that

they would corroborate her claims. Jordan further alleges that at the MSPB hearing held on February 6, 1986, Hudson provided false testimony regarding her claims of sexual harassment and that Kidd and Watson provided false testimony about instances of Jordan's sexual harassment of female employees. Jordan alleges that Hudson's charge of sexual harassment was contrived in retaliation for his having assigned her to a mail route, and that Watson and Kidd conspired to testify falsely in support of such charges in order to have Jordan discharged or disciplined.

Based on these allegations of misconduct, Jordan asserts that each defendant has tortiously interfered with his contractual relationship with the Postal Service, and has engaged in a conspiracy to injure him in his "reputation, trade, business or profession" in violation of Va.Code §§ 18.2–499 and 18.2–500. As discussed below, the Court has decided to grant summary judgment for the defendants and to dismiss Jordan's claims with prejudice. The material facts in this case are undisputed, and on this record the defendants are entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.

## II.

### A. *The Absolute Immunity Doctrine*

Prior to the Supreme Court's recent decision in *Westfall v. Erwin*, 484 U.S. ——, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), it would have been routine to conclude that the defendants here are cloaked with absolute immunity from state-law tort liability. Previously, the rule in this Circuit had been that federal officials were absolutely immune from state-law tort suits based on conduct occurring within the scope of their employment. *General Electric Co. v. United States*, 813 F.2d 1273 (4th Cir.1987).

In *Westfall*, however, the Supreme Court unanimously ruled that "absolute immunity from state-law tort actions should be available only when the conduct of federal officials is within the scope of their official duties *and* the conduct is discretionary in nature." *Id.*, 484 U.S. at ——, 108 S.Ct. at 584, 98 L.Ed.2d at 626 (emphasis in origi-

nal). In addition, the Court admonished lower courts to "consider whether the contribution [of immunity] to effective government in particular contexts outweighs the potential harm to individual citizens. Courts must not lose sight of the purposes of the official immunity doctrine when resolving individual claims of immunity." *Id.*, 484 U.S. at ——, 108 S.Ct. at 585, 98 L.Ed.2d at 627.

■ Accordingly, there are now three elements which must be satisfied before federal actors may be accorded absolute immunity from liability for state-law torts: (1) they must act within the outer perimeter of their federal duties; (2) they must exercise more than "minimal discretion" in their actions; and (3) the contribution of immunity to effective government must outweigh its potential harm to private citizens. As discussed below, the defendants' alleged conduct which the plaintiff claims gives rise to state tort liability, satisfies each of the elements required by *Westfall*.

1. The first element of this three-part test presents no difficulty. In order to fall within the outer perimeter of a federal employee's duties, the conduct "must enhance the performance of official function by advancing some legitimate purpose of the office in question." *Owens v. United States*, 822 F.2d 408, 410 (3d Cir.1987). As the Third Circuit has recognized, oral communication clearly advances the legitimate objectives of a federal employee's office when such communication concerns work-related matters. *Id.; Araujo v. Welch*, 742 F.2d 802, 806 (3d Cir.1984).

■ In the case at bar, Jordan attempts to base the defendants' liability on statements which Hudson made to postal inspectors; on conversations she is alleged to have had with Mr. Kidd and Mr. Watson; and on testimony provided by each of them at a formal hearing conducted by an officer appointed by the MSPB. While Jordan may dispute the accuracy of the verbal statements made by defendants on each of these occasions, his motion for judgment concedes that each such statement con-

cerned allegations that he had committed sexual harassment in the workplace. Ms. Hudson's description of her interview with the inspectors confirms that these statements were about work-related matters. Hudson Decl. at ¶ 4. The MSPB transcript also confirms this. Exh. 11.

Since sexual harassment is a form of discrimination made unlawful by Title VII, it follows that the defendants' statements regarding sexual harassment committed by Jordan in his capacity as postmaster, fell well within the sphere of their authorized work activity. As the court concluded in *Owens v. Turnage*, 681 F.Supp. 1095, 1098 n. 4 (D.N.J.1988), "criticism of performance furthers a legitimate office function." *Accord Wallen v. Domm*, 700 F.2d 124, 125 (4th Cir.1983); *Cross v. Fiscus*, 830 F.2d 755, 758 (7th Cir.1987).

■ Furthermore, as the Supreme Court recognized long ago, an otherwise appropriate conclusion that a federal employee took action within the outer perimeter of his duties is not defeated by allegations that he was motivated by malice or some other unworthy purpose. *Spalding v. Vilas*, 161 U.S. 483, 498–99, 16 S.Ct. 631, 637, 40 L.Ed. 780 (1896); *Barr v. Matteo*, 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959). It is clear, therefore, that the defendants' alleged statements were workrelated and took place within the "outer perimeter" of their employment.

■ 2. It is also clear that these defendants exercised more than "minimal discretion" when they participated in the discussions and hearing which are alleged to subject them to state-law tort liability. The alleged conduct was not a mere "ministerial" function of their jobs. It involved serious thought and judgment on the part of the defendants.

In *Araujo v. Welch*, 742 F.2d 802 (3d Cir.1984), the plaintiff, a civilian EEO officer at a military facility, brought suit against her supervisor, a major general who was the commanding officer of the installation. She alleged that her supervisor had verbally assaulted her and, in so doing, had commited the tort of intentional infliction of emotional distress. The alleged verbal assault arose out of a discussion regarding work-related matters at an EEO conference held on the base. *Id.*, 742 F.2d at 805. In concluding that the alleged tort had been committed while the defendant supervisor was performing a discretionary act, the court held that participating in a discussion regarding work-related matters "is certainly within Major General Welch's discretionary powers." *Araujo*, 742 F.2d at 805.

This principle, that discussions regarding work-related matters are generally discretionary, applies equally here despite two factual differences between *Araujo* and the instant case. The first difference lies in the defendants' positions. In *Araujo*, the defendant was a major general in the U.S. Army and a commanding officer; here, the defendants are three clerks in a U.S. post office. The authorities are clear, however, that entitlement to absolute immunity "is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government ... and we cannot say that these functions become less important simply because they are exercised by officers of lower rank in the executive heirarchy." *Barr v. Matteo*, 360 U.S. at 572–73, 79 S.Ct. at 1340 (1959). Thus, absolute immunity is not determined by the title of the office, but rather by the nature of the federal employee's duties. *See Westfall v. Erwin*, 484 U.S. at — n. 3, 108 S.Ct. at 584 n. 3, 98 L.Ed.2d at 625 n. 3. Just as in *Araujo*, then, these defendants acted within the scope of their discretion when they made statements regarding the work-related matter of Jordan's alleged sexual harassment.

And while it was a supervisor who was sued in *Araujo*, on account of his statements to a subordinate, this does not make the rule of that case inapplicable here. In this case, it is the subordinates who are alleged to have engaged in discussions with each other and with third parties about the performance of their supervisor. Nonetheless, the effective functioning of the federal workplace demands that subordinates, no less than supervisors, be con-

sidered to act within the compass of their discretionary authority when they engage in conversation among themselves and provide information to investigators regarding the unlawful behavior of their supervisors in the workplace.

In sum, it is clear that employees act with more than minimal discretion when they engage in discussions and provide information regarding sexual harassment by a fellow employee. A decision to complain about sexual harassment in the workplace can be a highly personal and emotional matter. This is particularly so when such a charge is made against a supervisor. The victim may reasonably consult fellow employees about their knowledge of the events and their belief as to the foundation for the claim. The decision to seek counsel from one's fellow employees involves careful evaluation of the risks and benefits. The request for advice from one's colleagues is the product of a judgmental thought process, and the responses from those colleagues will also reflect deliberative judgment.

Viewed in this light, it is clear that each act alleged by the plaintiff as a basis for state-law tort liability reflects conduct which was the product of the defendants' judgment and choice among competing alternatives. These were obviously *not* merely ministerial acts, and for this reason the Court concludes that the communications attacked by the plaintiff were sufficiently discretionary to warrant the protection afforded by absolute immunity.

3. Finally, the Court must consider whether, in this particular context, the contribution of the doctrine to effective government outweighs its potential harm to individual citizens. The Supreme Court in *Westfall* did not provide much detail on this general balancing test. Indeed, it invited Congress to set forth legislative standards to provide useful guidance for "the complex and often highly empirical inquiry into whether absolute immunity is warranted in a particular context." *Westfall v. Erwin*, at ——, 108 S.Ct. at 585, 98 L.Ed.2d at 628.

■ Under these circumstances, the Court concludes that the important policy of encouraging federal employees to be vigorous in their identification of sexual harassment in the workplace dictates that the balance of benefits and harms be struck in favor of granting immunity here. Courts have recognized that sexual harassment in the federal sector is a form of humiliation and a "degrading practice." *Owens v. Turnage*, 681 F.Supp. 1095, 1099 (D.N.J.1988).

The eradication of this pernicious behavior requires that federal employees not be discouraged from discussions and investigations aimed at identifying those guilty of sexual harassment. Moreover, it is clear that the threat of personal liability for statements made in discussions about whether to file or support claims of sexual harassment, or for statements made during an investigation or hearing of such charges, could seriously deter federal employees from reporting or corroborating such instances of sexual harassment. As Justice Black noted, in concurring in *Barr v. Matteo*, subjecting a federal employee to a state-law tort suit "for criticizing the way an Agency or its employees perform their duties would certainly act as a restraint upon him." *Id.*, 360 U.S. at 577, 79 S.Ct. at 1342.

Accordingly, these defendants should be insulated from personal liability to the plaintiff and granted absolute immunity from state-law tort actions predicated on their role in discussions and investigations regarding acts of sexual harassment. Since sexual harassment in the workplace is expressly prohibited by federal law, the public interest will be served by conduct and communications that help identify and eradicate such practices.

Without such absolute immunity for statements regarding charges of sexual harassment in the workplace, federal employees will be deterred and less likely to reveal or confirm allegations of harassment. In short, the public interest lies in granting immunity to the defendants in this case, thus satisfying the third element of the *Westfall* standard. For these rea-

sons, the Court holds that the defendants are shielded by absolute immunity and grants their motion for summary judgment on all of the plaintiff's claims.

Finally, one similar federal case deserves specific mention. In *Strothman v. Gefreh,* 739 F.2d 515 (10th Cir.1984), the court concluded that immunity applies to protect federal employees who criticize the work of other federal employees. In *Strothman,* one administrative law judge sued seven of his colleagues after they had criticized him for his mismanagement of a hearing office. In holding that the critical statements were immune from a common law defamation suit, the Tenth Circuit presaged the ruling of the Supreme Court in *Westfall.* The *Strothman* court concluded that: (1) the criticism fell within the scope of the ALJs' official duties; (2) the statements involved the exercise of judgment or discretion; and (3) granting absolute immunity to such statements would further the policies underlying the immunity doctrine, in that the balance of harm to the plaintiff versus the goal of promoting effective government tilted in favor of granting immunity. *Strothman,* 739 F.2d at 518–19. In so ruling, the Tenth Circuit followed exactly the same standards adopted by the Supreme Court in its 1988 decision in *Westfall.* On its similar facts, the *Strothman* decision is persuasive and supports the conclusion that immunity should be granted to these defendants.

B. *The Alleged Violation of Va. Code § 18.2–499*

In paragraphs 15 and 16 of his motion for judgment, Jordan alleges that the defendants conspired to injure him in his "reputation, trade, business and profession" as a United States postmaster, in violation of Va. Code § 18.2–499, and that as a result of their conspiracy he was removed from that position. He brings a claim under § 18.2–500 seeking treble damages for the alleged violation of § 18.2–499.

However, these allegations fail to state a claim for relief under Va. Code § 18.2–499, because as construed that statute addresses only injuries to one's *business,* not injuries to one's employemnt interests. While the Virginia Supreme Court has not squarely addressed this question, this construction of § 18.2–499 was recently adopted by the Fourth Circuit. In *Buschi v. Kirven,* 775 F.2d 1240 (4th Cir.1985), several discharged employees of a state mental hospital brought numerous claims, including allegations that the defendant had violated § 18.2–499. In affirming the dismissal of the plaintiffs' claim under the statute, the Fourth Circuit followed the unanimous view of federal district courts sitting in Virginia that the state statute was not meant to supply a remedy for damage to one's employment status or relationship:

[Plaintiffs] make no claim of a business-related injury; their claim relates to their employment and possible injury to their employment reputation. In an unbroken line of federal district cases, beginning with Judge Merhige's opinion in *Federated Graphics Companies, Inc. v. Napotnik,* 424 F.Supp. 291, 293–94 (E.D.Va. 1976) and continuing as late as *Nationwide Mutual Fire Insurance Co. v. Jones,* 577 F.Supp. 968, 969–70 (W.D.Va. 1984), the federal district courts in Virginia have consistently held that a right of action is "afforded [under these statutes] only when malicious conduct is directed at one's *business,* not one's *person,*" and that the statute "focuses upon conduct directed at property, *i.e.,* one's business," and applies only to "conspiracies resulting in business-related damages." The clear thrust of those cases is, as two commentators have said, that "[t]he employment relation [is to] be characterized as a personal right as opposed to a business interest" and is without the ambit of these state statutes. This was made clear in *Campbell v. Board of Supervisors,* 553 F.Supp. 644, 645 (E.D.Va. 1982), where the court said "the section (i.e., § 18.2–500, which was the only one giving a civil remedy) is aimed at conduct which injures a 'business'" and the statute is to be "construed to exclude employment from its scope."

*Buschi v. Kirven,* 775 F.2d at 1259 (footnotes omitted, emphasis in original). The

Virginia Supreme Court has held that in order "to recover in an action [under § 18.2–500] for conspiracy to harm a business, the plaintiff must prove (1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his *business,* and (2) resulting damages to plaintiff." *Allen Realty Corp. v. Holbert,* 227 Va. 441, 318 S.E.2d 592, 596 (1984) (emphasis added). The court implicitly contemplated that only injuries to business interests will be remedied, thus confirming the approach taken by the federal courts applying § 18.2–500.

For this reason as well, the Court dismisses Jordan's claim that these defendants violated Va. Code §§ 18.2–499 and 18.-2–500, because it fails to state a claim upon which relief may be granted. Rule 12(b)(6), Fed.R.Civ.P.

An appropriate order shall issue entering judgment for the defendants.